TARA K. MCGRATH
United States Attorney
SABRINA L. FEVE
Assistant United States Attorney
California Bar No. 226590
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6786
Email: Sabrina.Feve@usdoj.gov

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 23-CR-0177-RSH |
|---|---|
| Plaintiff, | |
| v. | **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS COUNTS ONE AND TWO OF THE SUPERSEDING INDICTMENT (ECF 37)** |
| THEODORE E. ESSENFELD, | |
| Defendant. | |

The United States of America, by and through its counsel, Tara K. McGrath, United States Attorney, and Sabrina L. Fève, Assistant U.S. Attorney, hereby files its Response in Opposition to Defendant's Motions to Dismiss Counts One and Two of the Superseding Indictment (ECF No. 37).

I.

**INTRODUCTION**

This case involves charges of cyberstalking and identity theft whose gravamen turns on allegations that defendant Theodore E. Essenfeld impersonated Victim A over a fifteen-month period, during which he signed Victim A up for a social media account, a

professional networking account, email accounts, a cell phone account, and dating services without her knowledge or consent, and used these imposter accounts to damage Victim A's reputation, depict her in a false light, intentionally inflict substantial emotion distress, and conceal his identity as the true operator of the imposter accounts.

Defendant's Motions to Dismiss Counts One and Two of the Superseding Indictment argue that the cyberstalking charge (Count One) should be dismissed because "his conduct in this case is protected under the First Amendment," [ECF 37 at 6], and the identity theft charge (Count Two) should be dismissed "because he can only be prosecuted for identity theft if Count One is upheld." [*Id.* at 15.]  In support of these arguments, defendant alleges facts that are not included in the Superseding Indictment and challenges the sufficiency of the government's anticipated evidence.

Unsurprisingly, the parties disagree about the facts of this case and the inferences to be drawn from them.  Ultimately, it will be for the jury to decide what Essenfeld did, what he intended, and what harm he caused.  Once the jury addresses those questions, this Court can consider whether, as defendant argues, the First Amendment insulates him from liability for Count One.  Until then, his First Amendment as-applied challenge to Count One remains premature and his Motion to Dismiss Count One should be denied pending trial. Defendant's Motion to Dismiss Count Two should also be denied, but as a matter of law, because, contrary to defendant's argument, the Ninth Circuit has specifically ruled that "a § 1028(a)(7) conviction requires no evidence of an underlying crime." *United States v. Sutcliffe*, 505 F.3d 944, 960 (9th Cir. 2007).

## II.

## PROCEDURAL HISTORY

On February 2, 2023, a grand jury indicted defendant Theodore E. Essenfeld (hereafter, "defendant" or "Essenfeld") with one count of cyberstalking in violation of 18 U.S.C. § 2261A(2)(B). [ECF 1.]  Agents with the Naval Criminal Investigative Service (NCIS) arrested Essenfeld the next day.  [ECF 2.]  On February 6, 2023, Essenfeld was arraigned on an Indictment, and subsequently released on bond.  [ECF 4, 13-16.]

2

*Gov. Resp. in Opp. To Def.'s Mot. to Dismiss*                                            23CR0177-RSH

On August 10, 2023, the grand jury returned a Superseding Indictment that charged Essenfeld with cyberstalking in violation of 18 U.S.C. §2261A(2)(B) (Count 1) and identity theft in violation of 18 U.S.C. § 1028(a)(7) (Count 2). [ECF 27.] On August 18, 2023, this Court arraigned Essenfeld on the Superseding Indictment.

On February 26, 2024, Essenfeld filed a Motion to Dismiss Counts One and Two of the Superseding Indictment, along with a Motion for Order to Shorten Time to permit the late filing. [ECF 36, 37.] On February 27, 2024, the Court granted the Motion for Order to Shorten Time and directed that any Opposition be filed by March 11, 2024. [ECF 38.]

### III
### THE CHARGED CONDUCT

The Superseding Indictment's Introductory Allegations provide the following factual background: at all relevant times, Victim A was a private person. Essenfeld met Victim A when they both resided in San Diego County and the two began dating around the spring of 2018. In January 2020, Essenfeld moved to Colorado. In May 2021, Victim A joined Essenfeld in Colorado. In August 2021, Essenfeld and Victim A broke up and, in January 2022, Essenfeld moved back to San Diego. At no time between November 1, 2022 and May 12, 2022 did Victim A authorize Essenfeld to use her name or date of birth to create or operate accounts with Facebook, LinkedIn, Yahoo, or any disposable cell phone provider. [ECF 27, ¶¶ 1-7.]

Count One of the Superseding Indictment alleges that, between approximately November 1, 2022 and May 12, 2022, Essenfeld, acting with the intent to harass and intimidate Victim A, used electronic and interstate communication services that included Facebook, LinkedIn, Yahoo, and a cell phone service provider to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to Victim A. [ECF 27, ¶ 9.]

Examples of the "course of conduct" that Essenfeld allegedly engaged in included: using Victim A's name, likeness, and biographical information (hereafter, her personal identification information or "PII") without her knowledge or consent to register email

accounts, a Facebook account, a LinkedIn account, and a disposable cell phone account in her name (hereafter, the "imposter accounts"). [ECF 27, ¶ 10.a.] Using Victim A's PII without her knowledge or consent to make the imposter Facebook and LinkedIn accounts falsely appear to be Victim A's personal social media accounts. [ECF 27, ¶ 10.b.] Using the imposter email accounts and disposable cell phone account to conceal his identity as the imposter accounts' creator and operator. [ECF 27, ¶ 10.c.] And using the imposter Facebook and LinkedIn accounts to harass and intimidate Victim A. [ECF 27, ¶ 10.d.]

The Superseding Indictment also included the following allegations regarding how Essenfeld used the imposter Facebook and LinkedIn account to harass and intimidate Victim A: Essenfeld used the imposter Facebook account to join Facebook dating groups and falsely make it seem like Victim A was seeking to date or engage with other users of those Facebook dating groups. [ECF 27, ¶ 10.d.i.] Essenfeld posted adult-content media files to the imposter Facebook account to make it falsely appear as thought Victim A was posting the content. [ECF 27, ¶ 10.d.ii.] Essenfeld posted erotic photos and videos of Victim A, which she had privately shared with him during their relationship, to the imposter Facebook account. [ECF 27, ¶ 10.d.iii.] Essenfeld posted private and obscene photos of Victim A to the imposter Facebook account. [ECF 27, ¶ 10.d.iv.] Essenfeld drew attention to the imposter Facebook account by linking it to people and institutions that knew Victim A, including her employer and alma mater. [ECF 27, ¶ 10.d.iv.] And Essenfeld falsely stated on the imposter LinkedIn account that Victim A's professional occupation was "Pole Dancer." [ECF 27, ¶ 10.d.vi.] Count Two of the Superseding Indictment charges Essenfeld with committing identity theft by using Victim A's name and date of birth in connection with Count 1. [ECF 27, ¶ 12.]

## IV.
## POINTS & AUTHORITIES

### A. Standard of Review

Motions to dismiss criminal charges are brought under Rule 12 of the Federal Rules of Criminal Procedure. "Federal Rule of Criminal Procedure 12(b) allows a defendant to

file a pretrial motion to dismiss an indictment for failure to state an offense if the motion 'can be determined without a trial on the merits.'" *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017) (quoting Fed. R. Crim. P. 12(b)(3)(B)(v)). "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact." *Id.* (quoting *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993).) In determining whether an indictment charges a cognizable offense, the courts are bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment. *Id.* (citing *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).) The "unavailability of Rule 12 in determination of general issues of guilt or innocence...helps ensure that the respective provinces of the judge and jury are respected...." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). If the pretrial claim is "substantially founded upon and intertwined with" evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred until after trial. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

**B. <u>Applicable Law</u>**

  **1. The First Amendment**

  The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The right to free speech, however, "is not absolute." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002). Laws or policies that target conduct, but that burden speech incidentally, may be valid. *See, e.g., Virginia v. Hicks*, 539 U.S. 113, 123–24 (2003). When laws do burden speech, not all speech is "of equal First Amendment importance." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("where matters of purely private significance are at issue, First Amendment protections are often less rigorous") (citations omitted). Similarly, for statutes whose sweep encompasses speech, there are traditional narrow carve-outs to the First Amendment that allow Congress to restrict certain types of speech, "including obscenity, defamation, fraud, incitement, and

speech integral to criminal conduct." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (internal citations omitted); *United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019). There are also state tort laws that have historically been afforded similar First Amendment exceptions, such as "false light" tort actions and claims for intentional infliction of severe emotional distress. *See, e.g., Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 249 (1974); *Time, Inc. v. Hill*, 385 U.S. 374, 388-390 (1967); Restatement (Second) of Torts § 652E; *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); Restatement (Second) of Torts § 46 ill. 1.

Litigants seeking to challenge a statute on First Amendment grounds can do so in two ways: by bringing a facial overbreadth challenge and by bringing an as-applied challenge. *See, e.g., Virginia v. Hicks*, 539 U.S. 113, 124 (2003); *Waggy*, 936 F.3d at 1018; *United States v. Osinger*, 753 F.3d 939, 940, 944 (9th Cir. 2014). An overbreadth challenge asserts that a statute impermissibly punishes constitutionally protected speech in one of three ways: 1) by establishing that there are no circumstances under which the statute is valid, *Stevens*, 559 U.S. at 472 (citations omitted); 2) by establishing that the statute lacks any "plainly legitimate sweep," *id.* (citations omitted); or 3) by establishing that the law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep . . . until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Hicks*, 539 U.S. at 118-119 (internal citations omitted).

The party claiming overbreadth "bears the burden of demonstrating" that substantial overbreadth exists. *Id.* at 122 (internal quotations omitted). Invalidating a statute for overbreadth is "strong medicine" that is not to be "casually employed." *United States v. Williams*, 553 U.S. 285, 292–93 (2008) (internal quotations omitted); *see also Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1567–68 (9th Cir. 1993). Overbreadth challenges to a statute will rarely "succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Hicks*, 539 U.S. at 124; *see also Osinger*, 753 F.3d at 944. As will be

6

discussed below, Essenfeld does not appear to be bringing a facial challenge to § 2261A(2)(B).

An "as-applied" First Amendment challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others. *Waggy*, 936 F.3d at 1018. When an as-applied First Amendment challenge brought via a motion to dismiss turns on disputed facts or facts outside the scope of the charging document, the district courts have typically denied the motion as "premature" because "the factual record has yet to be developed" and "neither the court nor parties are able to determine whether the statute, as applied in an evidentiary context, raises substantial constitutional issues." *United States v. Coronado*, 461 F. Supp. 2d 1209, 1217 (S.D. Cal. 2006); *see also United States v. Moore*, 2023 WL 5487340, *4 (E.D. Cal. Aug. 24, 2023); *United States v. Fanyo-Patchou*, 2020 WL 4816296, *1 (W.D. Wash. Aug. 19, 2020); *United States v. Chiochiu*, 2019 WL 3307546, *5–6 (D. Nev. Apr. 8, 2019); *United States v. Edwards*, 291 F. Supp. 3d 828, 833–34 (S.D. Ohio 2017).

### 2. 18 U.S.C. § 2261A

Count One of the Superseding Indictment charges Essenfeld with violating 18 U.S.C. § 2261A(2)(B) by, with the intent to harass and intimidate Victim A, using an interactive computer service, electronic communication service, electronic communication system of interstate commerce, and facility of interstate and foreign commerce to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress. [ECF 27, ¶ 9.] Congress has defined "course of conduct" as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

When considering the original version of § 2261A(2), which Congress enacted in 2006, the Ninth and Fourth Circuits identified the following three elements for the offense: 1) the defendant acted with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person; 2) the defendant used the mail, any interactive computer service or electronic communication service or

7

electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct; and 3) defendant's course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person, an immediate family member, or a spouse or intimate partner. *United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) (quoting *United States v. Shrader*, 675 F.3d 300, 309-310 (4th Cir. 2012)).

More recently, in *United States v. Ackell*, 907 F.3d 67, 72 (1st Cir. 2018), the First Circuit analyzed § 2261A(2)(B) and broke it into four elements: 1) the defendant had the requisite intent; (2) the defendant engaged in a course of conduct; 3) the defendant used a facility of interstate commerce; and 4) the defendant's "course of conduct" caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress. *See also United States v. Fleury*, 20 F.4th 1353, 1362 (11th Cir. 2021) (adopting *Ackell*'s four-part definition of § 2261A(2)(B)'s elements). Legally, the two sets of elements are indistinguishable, and the Eleventh Circuit relied on and approvingly cited both *Ackell* and *Osinger*. *Fleury*, 20 F.4th at 1363.

### C. Defendant's Motion to Dismiss Count One Should Be Denied

Defendant's Motion to Dismiss Count One should be denied for three reasons. First, the "course of conduct" alleged in the Superseding Indictment does not involve protected speech. Second, defendant's as-applied challenge is premature. Third, none of the cases cited by defendant warrant dismissal of Count One.

#### 1. Count One Properly Charges Unprotected Conduct

Defendant's motion to dismiss is an as-applied First Amendment challenge. "Mr. Essenfeld urges this court to now dismiss count one of the superseding indictment on the fact *that his conduct in this case* is protected under the First Amendment…" [ECF 37 at 6-7[1] (emphasis added).] Essenfeld's motion to dismiss does not allege, let alone discuss, a facial overbreadth challenge. Rather, he appears to acknowledge that the Ninth Circuit has

---

[1] References to Defendant's Brief cite to the page numbers at the bottom of the page, which are original to the Brief, not to the numbers printed in Pacer at the top of the page.

held that § 2261A does "not violate the First Amendment" and that "Courts of Appeal across the United States" have upheld § 2261A convictions. [ECF 37 at 12.]

The arguments that defendant marshals in support of his as-applied challenge appear to rely on disputed facts, which are discussed in Section IV.C.2 below. To the extent that defendant's as-applied First Amendment challenge to Count One also alleges a discrete legal defect, that argument should fail. Count One charges Essenfeld with engaging in a course of conduct that involved him stealing Victim A's identity to damage her reputation, depict her in a false light, and intentionally inflict substantial emotion distress by falsely and fraudulently making it appear as though she were posting and engaging in obscene and lascivious conduct and seeking dating/sexual partners. None of this alleged conduct constitutes protected speech.

Every Circuit to consider a First Amendment challenge to § 2261A has upheld the statute based on a determination that the statute criminalizes conduct, not speech. *See, e.g., Fleury*, 20 F.4th at 1363 (11th Cir. 2021); *Ackell*, 20 F.4th at 73 (1st Cir. 2018); *United States v. Gonzalez*, 905 F.3d 165, 193 (3d Cir. 2018); *United States v. Anderson*, 700 Fed.App. 190, 192 (4th Cir. 2017); *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015); *Osinger*, 753 F.3d at 944 (9th Cir. 2014); *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012); *United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004), judgment vacated on other grounds, 543 U.S. 1182, 125 S.Ct. 1420, 161 L.Ed.2d 181 (2005), reinstated in relevant part, 125 Fed. App'x 701 (6th Cir. 2005). While the Seventh Circuit has not opined on the constitutionality of § 2261A, it has cited with approval *Osinger*'s determination that § 2261A "targeted speech only incidentally, and principally 'proscribes harassing and intimidating conduct.'" *520 S. Michigan Ave. Assocs., Ltd. v. Unite Here Loc. 1*, 760 F.3d 708, 724 (7th Cir. 2014). Districts courts from the Tenth, Seventh, and Second Circuits have also upheld § 2261A over First Amendment challenges. *See, e.g., United States v. Bandy*, 2021 WL 876980, *5 (D. N.M. Mar. 9, 2021); *United States v. Storme*, 2021 WL 3674611, *3-4 (N. D. Ill. Aug. 19, 2021); *United States v. Mara*, 2021

WL 8200597, *4 (W.D. NY. April 19, 2021). The weight of the relevant caselaw therefore recognizes that § 2261A(2)(B) targets conduct, not speech.

To the extent that Defendant has or could argue that the crime charged in Count One, while not targeting speech, nonetheless impermissibly impinges on speech, his argument fails because he has not identified any speech alleged in Count One. The allegations in Count One, which at this stage of the case are to be accepted as true, *Boren*, 278 F.3d at 14, describe conduct that, at most, is "imbued with elements of communication." *Ackell*, 907 F.3d at 73 (quoting *Texas v. Johnson*, 491 U.S. 397, 4040 (1989). The Ninth Circuit, however, has rejected the argument that using electronic communications in furtherance of a crime is protected speech. *Waggy*, 936 F.3d at 1019 (noting that *Osinger* rejected a First Amendment challenge to § 2261A based on the "harassing and intimidating conduct" using electronic communication services like text messages and emails). While Essenfeld did, as the statute contemplates, use electronic communication services like Facebook, LinkedIn, cellular phone, and email, those communication services were integral to the charged course of conduct, which is one of the recognized First Amendment exceptions where Congress may regulate speech. *See Stevens*, 559 U.S. at 468; *Waggy*, 936 F.3d at 1017; *see also United States v. Hansen*, 599 U.S. 762, 783 (2023) ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.") (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).

Three of the other recognized First Amendment exceptions – fraud, defamation, and obscenity – also apply to the conduct charged in Count One. *See Stevens*, 559 U.S. at 468; *Waggy*, 936 F.3d at 1017. All the conduct alleged in Count One involved Essenfeld falsely claiming to be Victim A. Speech in furtherance of fraud is not protected speech under the First Amendment. *Hansen*, 599 U.S. at 769 ("The First Amendment does not shield fraud.") (quoting *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 612 (2003)). Media files that Essenfeld publicly posted to the imposter Facebook account, as

well as images that Essenfeld posted to the account's "Bedroom Fun" album, are the type of "sexually explicit material that violates fundamental notions of decency," which the Supreme Court has held are obscene and not subject to First Amendment protection. *Williams*, 553 U.S. at 288. Defamation "is an invasion of the interest in reputation" and "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1083 (S.D. Cal. 2017) (citations omitted). Defendant's use of the LinkedIn account to identify Victim A's occupation as "Pole Dancer" was false and intended to injure her reputation, as was his use of Facebook's dating services to make it falsely appear that she was soliciting sexual or dating encounters. The course of conduct alleged in Count One therefore did not allege protected speech.

### 2. Defendant's Motion to Dismiss Count One is Premature

Defendant's as-applied challenge is premature because it relies on his version of asserted "facts," which are not in evidence. *See Shortt Acct. Corp.*, 785 F.2d at 1452 (pretrial claims that are "intertwined with evidence concerning the alleged offense . . . fall[] within the province of the [jury] and must be deferred" until after trial) (citations omitted). The Superseding Indictment outlined the nature of Essenfeld's conduct and how it mapped onto the language of the charging statute. Rather than addressing Essenfeld's alleged course of conduct, pages two through six of his Motion make detailed factual allegations that focus on Victim A and go far beyond the limited background information contained in the Superseding Indictment. None of defendant's factual allegations about Victim A are properly before this Court, because the courts "should not consider evidence not appearing on the face of the indictment." *Boren*, 278 F.3d at 914; *Jensen*, 93 F.3d at 669.

The nature of defendant's factual allegations illustrate why it is impractical and unwarranted to consider them before trial. Defendant's descriptions of Victim A appear to be in furtherance of three overarching arguments: 1) some of what he posted was true; 2) some of what he posted was public and inoffensive; and 3) his conduct was not that bad. The government will address each argument separately.

Regarding his first argument, Essenfeld asserts that "nothing he posted [to the imposter accounts] was falsely created or was a lie about [Victim A]," other than that defendant was impersonating Victim A when he made these posts, which he admits. [ECF 37 at 9.] This characterization of the facts ignores the Superseding Indictment's alleged course of conduct, such as that, while impersonating Victim A, Essenfeld falsely made it appear that Victim A was posting salacious content and soliciting sexual/dating activity with other Facebook users, as well as falsely described her as a professional pole dancer on LinkedIn. Most importantly, the content of the imposter accounts is not currently in evidence, so the Court can only guess or speculate about what Essenfeld posted and whether these posts might constitute a "message" that is being "unconstitutionally restricted." *Id.*

Faced with a similar as-applied First Amendment motion to dismiss that involved allegations but no evidence, Judge Miller found that, "[u]ntil an evidentiary record is created, neither the court nor [the] parties are able to determine whether the statute, as applied in an evidentiary context, raises substantial constitutional issues," *Coronado*, 461 F. Supp. 2d at 1217. In reaching this determination, Judge Miller quoted the Supreme Court's admonition that the "District Court should not be forced to decide ... constitutional questions in a vacuum." *Id.* (quoting *W.E.B. DuBois Clubs of America v. Clark,* 389 U.S. 309, 312 (1967)). This rationale applies here, as well, and defendant's argument that he only posted the truth while impersonating Victim A and the posts he made in Victim A's name are his constitutionally protected speech should only be considered once the Court has heard evidence and the jury has had the opportunity to make its factual determinations.

Defendant's second argument, that he only posted inoffensive public information, relies on the Eighth Circuit's decision in *United States v. Petrovic*. [ECF 37 at 9-11.] Defendant cites *Petrovic* as requiring the following four-part test for determining when "it is constitutionally permissible to regulate the public disclosure of facts about private individuals" if there is otherwise no compelling state interest for regulating speech: 1) is the regulation viewpoint neutral; 2) are the facts revealed already in the public domain; 3) are the facts revealed about the otherwise private individual a legitimate source of public

interest; and 4) are the facts revealed highly offensive. [ECF 37 at 10; citing *Petrovic*, 701 F.3d at 855.] Applying this test to his version of the facts, defendant argues that "the government in Mr. Essenfeld's case fails on at least two of the factors ('the facts revealed are not already in the public domain,' and 'the facts revealed are highly offensive'). As such, the regulation on speech present in Mr. Essenfeld's case violates his First Amendment rights." [*Id.* at 11.]

There are two primary flaws with Essenfeld's reliance on *Petrovic*. First, this four-part test only applies when the statute in question has "no compelling state interest." *Petrovic*, 701 F.3d at 855. The courts, however, only require a "compelling state interest" to uphold a statute that regulates the content of speech. *See, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377, 395-396 (1992). In those cases where the challenged statute regulates speech based on content, strict scrutiny applies. *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 442-443 (2015). Strict scrutiny does not apply here because, as the Ninth Circuit has previously held, § 2261A regulates conduct, not speech. 753 F.3d at 944; *see also Ackell*, 907 F.3d at 74 (rejecting the argument that strict scrutiny should apply because "§ 2261A(2)(B) does not target speech"). Because § 2261A(2)(B) regulates conduct, rather than speech, there is no need to demonstrate a "compelling state interest" or satisfy *Petrovic*'s four-part test.[2]

---

[2] While the law does not require the government to demonstrate a compelling state interest in regulating cyberstalking, the public record and legislative history would satisfy such a showing were there a need. For example, in 2019, the Bureau of Justice Statistics estimated that, of the 3.4 million U.S. residents age 16 or older who were the victims of stalking in the prior 12 months, approximately 80% of those victims were stalked using technology, and an estimated 936,310 of those U.S. residents were victims of cyberstalking. *See Stalking Victimization, 2019*, U.S. Dep't of Just. (Feb. 2022), https://www.justice.gov/d9/2023-06/2022%20Report%20to%20Congress%20on%20Stalking.pdf. Research also shows that "[t]he fear victims have from stalking is pervasive and cumulative over time. Unlike a single stressful event that takes place against the backdrop of other normal psychological and social functioning, stalking interferes with many aspects of life. Even basic and ordinary routines become sources of terror for the target of stalking." T.K. Logan & Robert Walker, Stalking: A Multidimensional Framework for Assessment and Safety Planning, 18 TRAUMA, VIOLENCE & ABUSE 200 (2017),

The second flaw with Essenfeld's reliance on *Petrovic* is that "[d]eciding whether speech is of public or private concern requires the Court to examine the content, form, and context of that speech, as revealed by the whole record. . . . In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal citations omitted). The record of what Essenfeld said, where he said it, and how he said it is not yet before the Court. His motion to dismiss therefore remains premature.

While defendant's first two arguments articulated a First Amendment nexus, Essenfeld's third argument appears to be that the evidence is insufficient to meet § 2261A(2)(B)'s elements. For example, his brief argues:

- "While Mr. Essenfeld's conduct in this case was inexcusable, puerile, and immature, it did not come close to being 'harassing.'" [ECF 37 at 13.]
- "While it is true that [Victim A] told the special agents . . . that she had suffered embarrassment and anxiety from learning of the fake Facebook page, and that she had lost a few days of work due to the anxiety, that does not rise to the level of 'substantial emotional distress.'" [ECF 37 at 14.]
- "While Mr. Essenfeld's conduct and speech was tasteless and juvenile, he had no intent to cause [Victim A] substantial emotional distress." [ECF 37 at 14.]
- "Clearly, none of Mr. Essenfeld's conduct or speech in this case equates to intimidation." [ECF 37 at 15.]

Although Essenfeld can challenge the sufficiency of the government's evidence at trial, a "motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence." *Boren*, 278 F.3d at 914 (citations omitted). The proper forum for challenging

---

https://journals.sagepub.com/doi/10.1177/1524838015603210#fn1-1524838015603210. *See also* R. George Wright, *Cyber Harassment and the Scope of Freedom of Speech*, 55 U. Cal. Davis L. Rev. Online 187 (2020); Caitlin Ring Carlson et. al., *Access Denied: How Online Harassment Limits Enjoyment of Offline Public Accommodations*, 57 Gonz. L. Rev. 551 (2022).

whether there is adequate evidence is at trial. *Jensen*, 93 F.3d at 669 (9th Cir. 1996); *see also United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012) (in evaluating a motion to dismiss, "the court does not consider whether the government can prove its case, only whether . . . a crime has been alleged"). To the extent that Essenfeld's motion seeks to dismiss Count One based on the alleged insufficiency of the government's evidence, that motion should be brought as a Rule 29 motion after trial. If there is a First Amendment argument associated with defendant's challenge to the adequacy of the government's presumed evidence, then it is intertwined with the evidence and should be denied as premature. A "motion to dismiss is appropriately granted when it is based on questions of law rather than fact." *United States v. Shulman*, 817 F.2d 1355, 1358 (9th Cir. 1987) (citations omitted). Because all three of defendant's arguments in support of his as-applied First Amendment challenge involve questions of fact and rely on evidence outside the scope of the Superseding Indictment, his Motion to Dismiss Count One is premature and should be denied without prejudice to revisit these claims post-trial.

### 3. None of the Other Cases Defendant Cites Warrant Dismissal of Count One

Defendant cites, but does not discuss, two additional cases in support of his Motion to Dismiss Count One: *United States v. Cassidy*, 814 F.Supp.2d 574 (D. Md. 2011) and *United States v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010). [ECF 37 at 9.] Neither of these cases justify dismissal.

*Cassidy* is an outlier where a Maryland District Judge granted an as-applied First Amendment challenge brought via a motion to dismiss the indictment. 814 F.Supp.2d at 589. To reach the facts at issue in the as-applied challenge, *Cassidy* considered the affidavit submitted in support of the complaint that initially charged the defendant with violating § 2261A and, based on the complaint affidavit, determined that the victim identified in the indictment was a "well-known religious figure" who had previously been the subject of "a critical non-fiction book." *Id.* at 583. *Cassidy* also considered an appendix of derogatory "Tweets and blog posts" the defendant had posted regarding the victim. *Id.* Based on this evidence, *Cassidy* held that the charged conduct consisted of challenges to the victim public

figure's "character and qualifications as a religious leader" and therefore warranted First Amendment protection. *Id.* In reaching this conclusion, however, *Cassidy* noted that "the Government's Indictment is not limited to categories of speech that fall outside of First Amendment protection—obscenity, fraud, defamation, true threats, incitement or speech integral to criminal conduct. Because this speech does not fall into any of the recognized exceptions, the speech remains protected." *Id.* In this case, however, there is no complaint affidavit, Victim A is a private figure, and the limited exceptions do apply. *Cassidy* therefore does not justify dismissal. *Cassidy* has also been distinguished or declined to follow by most courts to consider it, including the Ninth Circuit in *Osinger*. *See Osinger*, 753 F.3d at n. 6; *see also Ackell*, 907 F.3d at 76-77; *United States v. Anderson*, 700 Fed.App. 190, 192 (4th Cir. 2017); *Storme*, 2021 WL 3674611, *5.

The other case that defendant cites, *United States v. Alvarez*, is also unavailing. *Alvarez* did not involve § 2261A(2)(B), but instead analyzed 18 U.S.C. § 704(b), which was codified under the Stolen Valor Act. 616 F.3d at 1200. In *Alvarez*, the defendant falsely claimed to have received the Congressional Medal of Honor and was charged with a misdemeanor violation of the Stolen Valor Act, which proscribed making false "representations about one's being awarded Congressionally authorized military honors and decorations." *Id.* at 1202. The parties agreed, as did the Ninth Circuit, that the statute, as it was then drafted, "applie[d] to pure speech" and only regulated words, not conduct. *Id.* at 1200, 1202. While noting that there "is certainly no unbridled constitutional right to lie," *id.* at 1206, *Alvarez* found that the speech at issue did not fall within one of the historical exceptions because, while the defendant had made a false statement, there was no evidence of harm arising from the false statement, such as an intent to mislead or impersonating an officer, nor was there evidence of defamation or obscenity. *Id.* at 1202, 1211, 1213. Based on the lack of a controlling First Amendment exception to permit the regulation of such speech, and the Stolen Valor Act's criminalizing speech itself, *Alvarez* vacated the defendant's misdemeanor conviction. Both the offense and the conduct in *Alvarez* are distinguishable from Count One. Count One charges defendant with violating

§ 2261A(2)(B), which regulates conduct; it also alleges an intent to deceive, an intent to harm, and the charged conduct falls within several First Amendment exceptions. *Alvarez* therefore does not justify dismissal of Count One.

If anything, *Alvarez* supports the charging theories behind Count One. *Alvarez* was careful to distinguish the Stolen Valor Act from statutes that criminalized impersonating an officer. Unlike the Stolen Valor Act, "impersonation statutes are drafted to apply narrowly to conduct performed in order to obtain, at a cost to another, a benefit to which one is not entitled." *Alvarez*, 617 F.3d at 1212. The federal impersonation statute, 18 U.S.C. § 912, prohibits "falsely *assum[ing] or pretend[ing]* to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or *in such pretended character demands or obtains* any money, paper, document, or thing of value. . . ." *Id.* (emphasis original; quoting 18 U.S.C. § 912). Similarly, Count One alleges that, in the guise of pretending to be Victim A, defendant obtained a Facebook account, a LinkedIn account, a disposable cell phone, and multiple email accounts. By assuming Victim A's identity, Essenfeld also had the opportunity to damage her reputation, portray her in a false light, and intentionally inflict substantial emotion distress on her. *Alvarez* thus suggests that any incidental speech involved in defendant's course of conduct was not protected.

### D. Defendant's Motion to Dismiss Count Two Should Be Denied

Count Two of the Superseding Indictment charges Essenfeld with violating 18 U.S.C. § 1027(a)(7). [ECF 27, ¶ 12.] As charged in Count Two, § 1027(a)(7) criminalizes knowingly using, without lawful authority, a means of identification of another person in connection with any unlawful activity that constitutes a violation of federal or state law. Count Two identifies Victim A as the person whose means of identification was used without authorization and Count One as the unlawful activity that violates federal law. Defendant argues that Count Two should be dismissed because, "if count one falls in this case, then count two must fall as well." [ECF 37 at 16.] In support of his argument, defendant cites no cases. Instead, he admits to using Victim A's name and date of birth

17

*Gov. Resp. in Opp. To Def.'s Mot. to Dismiss*                                      23CR0177-RSH

without authorization but argues that he only stole her identity so that he could "expose her" and that, while his "conduct may indeed be unethical, it was not illegal" because his creation and use of the imposter accounts is protected by the First Amendment. *Id*. There are at least two problems with this argument.

First, defendant's assertion that Count Two cannot be a stand-alone charge is forestalled by *United States v. Sutcliffe*, 505 F.3d 944, 959–60 (9th Cir. 2007). In *Sutcliffe*, a disgruntled former employee created a website to which he posted the names, dates of birth, social security numbers, and residential addresses of former fellow employees. *Id*. at 950. Along with this information, Sutcliffe included a hyperlink to an article about identity theft. *Id*. The government charged Sutcliffe with violating § 1028(a)(7) based on the theory that, by posting this PII along with information about how it could be misused, Sutcliffe used and transferred without authorization a means of identification of another to aid and abet a federal crime, namely 42 U.S.C. § 408(a)(7)(B) (false representation of social security number with the intent to deceive). *Id*. at 952; *see also* Brief of UNITED STATES OF AMERICA, Plaintiff-Appellee, v. Steven William SUTCLIFFE, Defendant-Appellant, 2006 WL 3098406.[3]

Following his conviction, Sutcliffe argued that the § 1028(a)(7) counts should be reversed because the government had not proven a violation of 42 U.S.C. § 408(a)(7)(B). *Id*. at 959. The Ninth Circuit disagreed. "There is no question that a conviction for aiding and abetting a crime requires proof that the underlying crime was committed, but we do not agree with Defendant that a conviction under § 1028(a)(7) requires such proof." *Id*. Rather, the Ninth Circuit held, "a § 1028(a)(7) conviction requires no evidence of an underlying crime." *Id*. at 960. Under *Sutcliffe*, then, the government does not need to charge, let alone prove, a violation of § 2261A(2)(B) to prevail on Count Two. Defendant's motion to dismiss Count Two should therefore be denied as a matter of law.

---

[3] Sutcliffe also posted threatening messages to this website, which the government charged under 18 U.S.C. § 875(c). 505 F.3d at 952. The § 875(c) counts were not, however, part of the charging theory for the § 1028(a)(7) counts. *Id*.

The second problem with defendant's Motion to Dismiss Count Two is that, like his Motion to Dismiss Count One, his argument involves questions of fact. The evidence of what Essenfeld sought to "expose" and why he did so is not yet before the Court. Any argument that relies on evidence of what Essenfeld did and did not do with the imposter accounts is therefore premature. *See Shulman*, 817 F.2d at 1358. If the Court declines to deny the Motion to Dismiss Count Two as a matter of law, the government respectfully submits that the Motion should be denied as premature.

## V.
## CONCLUSION

First Amendment challenges are uncommon, complex, and fact specific. For this reason, the courts are loathe to decide them in a vacuum. Defendant's Motion to Dismiss Count One relies on disputed factual allegations and evidence that is not yet before the Court. It is therefore premature and should be denied without prejudice. Defendant's Motion to Dismiss Count Two, however, raises a pure question of law: whether Count Two requires a successful conviction for Count One. The Ninth Circuit has held it does not. Defendant's Motion to Dismiss Count Two should therefore be denied.

DATED: March 11, 2024             Respectfully submitted,

                                  TARA K. MCGRATH
                                  United States Attorney

                                  *Sabrina L. Feve*
                                  SABRINA L. FEVE
                                  Assistant U.S. Attorney