1                   UNITED STATES DISTRICT COURT

2                 SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,  )  CASE NO.: 3:23-cr-00177-RSH
                                )
5              Plaintiff,       )  MONDAY, MARCH 4, 2024
                                )  SAN DIEGO, CALIFORNIA
6    v.                         )
                                )  STATUS HEARING
7    THEODORE E. ESSENFELD,     )
                                )  HONORABLE ROBERT S. HUIE
8           Defendant.          )  UNITED STATES DISTRICT JUDGE
     _____)  SOUTHERN DISTRICT OF CALIFORNIA

9

10   APPEARANCES:

11   For the Plaintiff, UNITED STATES GOVERNMENT:

12        UNITED STATES ATTORNEY'S OFFICE
          SOUTHERN DISTRICT OF CALIFORNIA
13        BY:  SABRINA FEVE, ASSISTANT UNITED STATES ATTORNEY
          880 Front Street, Room 6293
14        San Diego, California  92101-8893
          Ph: (619) 557-5610
15        E-mail: sabrina.feve@usdoj.gov

16

17   For the Defendant, THEODORE E. ESSENFELD:

18        LAW OFFICES OF KERRY L. ARMSTRONG, APLC
          BY:  JACOB A. KATZ, ESQ.
19        750 B Street, Suite 2820
          San Diego, California  92101
20        Ph: (619) 234-2300
          E-mail:  notguilty01@outlook.com

21

22        _____

23

                 Tricia Rosate, RDR, CRR, FCRR, CSR No. 10891
24                  tricia_rosate@casd.uscourts.gov
          333 West Broadway, Suite 420, San Diego, California  92101
25            *Reported stenographically; Transcribed with CAT software*

1          SAN DIEGO, CALIFORNIA; MONDAY, MARCH 4, 2024

2                       3:02 p.m. - 4:12 p.m.

3                          -  -  -  -

4          THE CLERK:  Calling Matter No. 1 on the calendar,

5     23-cr-177, United States of America v. Theodore E. Essenfeld.

6          THE COURT:  Could I have appearances of counsel,

7     please.

8          MR. KATZ:  Good afternoon.

9          Jacob Katz for Theodore Essenfeld, specially appearing

10    for Kerry Armstrong, Your Honor.

11         THE COURT:  Mr. Katz, Mr. Essenfeld, good afternoon.

12         MS. FEVE:  Good afternoon, Your Honor.

13         Sabrina Feve for the United States.

14         THE COURT:  Good afternoon, Ms. Feve.

15         There are two pending motions in this case.  There is

16    a motion to dismiss filed by the defense and a motion to seal

17    filed by the Government.  Each of these motions has a briefing

18    schedule in place, so this afternoon is a status hearing.  It's

19    not to argue those motions as such, but I set this hearing for

20    today because I'm concerned that the case is starting to go off

21    the rails a little bit as it relates to communication or lack of

22    communication between counsel with implications for the Court,

23    as well.

24         We have a long ways to go together.  The case has been

25    pending for a while, but we still have substantive motions to be

1   heard, we have our in limine motions, and we have trial.  I'm

2   hoping that the time we spend today will be productive and

3   beneficial as we are spending more time together in the future,

4   for the remainder of this case.

5          Mr. Katz, your colleague, Mr. Armstrong, is in a

6   murder trial currently; is that correct?

7          MR. KATZ:  Yes, Your Honor, across the street.  I

8   anticipate the murder trial will be done around March 6th;

9   however, I know that the briefing schedule has a requirement to

10  submit something prior to that, and I believe he's on course to

11  submit that.

12         I have spoken with the AUSA about specifics that we

13  can handle here today that may move things along.  We were able

14  to communicate pretty well together.

15         I don't know if Ms. Feve wants to go into that.

16         THE COURT:  So, Mr. Katz, it sounds like you're up to

17  speed on where we are more or less in the case?

18         MR. KATZ:  Yes, Your Honor.  I am up to speed on where

19  we are.  I don't think I have the authority to argue much for

20  either the motions or anything beyond that, but I have spoken

21  with Ms. Feve to kind of mend communications.

22         THE COURT:  Okay.  So for that reason, as well, I

23  don't want to get into the merits of the motion to dismiss,

24  especially if it's a Constitutional claim.

25         MR. KATZ:  Yes, Your Honor.

1    THE COURT:  So before I go on, is there some agreement

2    that the parties have reached?

3            MR. KATZ:  Yes, Your Honor.

4            THE COURT:  All right.  Ms. Feve, do you want to speak

5    to that?

6            MS. FEVE:  Yes, Your Honor.

7            The parties are in agreement that ECF 37, which is the

8    motion to dismiss, should be filed under seal pending the

9    Court's resolution of the Government's motion to redact or file

10   under seal.

11           THE COURT:  All right.  And are the grounds for

12   sealing the same as the grounds for sealing set forth in the

13   Government's motion to redact, or are there other grounds?

14           MS. FEVE:  They would also include the protective

15   order, Your Honor.

16           THE COURT:  Are there any other agreements I should

17   know about at this time?

18           MR. KATZ:  Nothing that I'm aware of, Your Honor.

19           MS. FEVE:  No, Your Honor.

20           And the only thing to clarify on behalf of

21   Mr. Armstrong is that you have not seen very much of us because

22   we actually have had very effective communication.  We recently

23   met and conferred regarding a series of stipulations as early as

24   three weeks ago.  Mr. Armstrong is a very in-demand defense

25   attorney.  He is in trial often, like week after week.  So this

1   is not that we can't communicate; it was that there was

2   time-sensitive information, and we recognize that with

3   Mr. Armstrong being in trial, we have a duty to the victim to

4   try to expeditiously get this under seal.  I'm not trying to

5   prejudice their ability to go forward with their motion.  I

6   don't think there's any acrimony.

7            MR. KATZ:  That's my understanding, Your Honor.

8            MS. FEVE:  It was a time-sensitive issue where counsel

9   was unfortunately unavailable, and we were trying initially to

10  handle it in as low-drama a fashion as possible without causing

11  any prejudice to any of the parties.  It was just -- under the

12  CVRA and the protective order, we want to make sure that we're

13  just doing everything very carefully.

14           THE COURT:  I appreciate that, and I guess it's true

15  for all of us.  We don't know what we don't know.  So I'm glad

16  to know that counsel are working together proactively and

17  cooperatively on that, and that's an indication of how

18  productive that is, that I don't know anything about it.  So I

19  accept that.

20           All right.  I'm going to ask my clerk to change the

21  setting on ECF 37 so that it is accessible only to counsel and

22  parties of this case pending further order of the Court.  I do

23  that because the parties have reached agreement on it, because

24  it's a provisional measure, and because I think it's within my

25  authority to do it, but I do want to proceed to raise some

1   concerns I have with the parties, having been informed by

2   Ms. Feve and Mr. Katz about the productive background.

3           There's been a lot of e-mail communication on this

4   case.  It's not part of the record in this case, and so I want

5   to put relevant parts of it on the record.  I think my concerns

6   going forward will be clear when I put those on the record.

7           I also have some questions for each side.  I recognize

8   that we have these two motions in place, but it may be that we

9   can streamline the matters in dispute even further.

10          So I'm going to go through the proceedings history

11  relevant to these motions chronologically.  The defense motions

12  were due on Friday, February 23rd.  That was a week ago last

13  Friday.  This was a deadline that was set in November of last

14  year, and that was after Mr. Armstrong substituted in.  It was

15  an extension from the original deadline for the motions.

16          Now, the defense didn't file a motion by that date and

17  didn't ask for more time, and instead on Monday -- so the next

18  business day, but on Monday, three days later, February 26th,

19  the defense filed a motion to dismiss and moved for an order

20  shortening time.  Now, the defense's motion was asking the Court

21  to accept the late filing because Mr. Armstrong was in trial,

22  which I accept.

23          The defense's motion didn't make any allowance for the

24  fact that by accepting that late motion, the Government, instead

25  of having 14 days to respond would only have 11 days to respond.

1       My deputy clerk at that time reached out to the

2   parties by e-mail to ask the Government's position on the

3   motion.  The Government didn't take a position but said that if

4   the late filing were accepted, then the Government should get

5   21 days to respond instead of 14 days because the motion raises

6   First Amendment issues.

7       The following day, Tuesday of last week, I entered a

8   minute order accepting the late filing and making it clear that

9   the Government would have a full 14 days to respond to the

10  motion to dismiss.  I kept the hearing date, because I want to

11  keep the dates in this case on track.  They've already moved

12  once.  My order just gave me a little less time to review the

13  briefing, which is okay.

14      Now, the Government was and still is free to request

15  additional time to respond to the motion to dismiss, but that

16  request has to be made by motion.  It cannot be made by e-mail.

17      On Wednesday afternoon of last week, the Government

18  filed a motion to redact information from the defense's motion

19  to dismiss.  Now, the Government's motion didn't indicate the

20  defense's position on the motion, so on Thursday, my deputy

21  clerk reached out to the parties by e-mail to ask for that

22  position.

23      Mr. Armstrong responded by e-mail that the defense

24  opposes.

25      In light of that, on Friday morning, I entered an

1   order setting forth an expedited briefing schedule on the

2   Government's motion to redact, and I also gave the plaintiff an

3   option to file a reply brief.

4          Later that morning, Ms. Feve, you wrote to my deputy

5   clerk by e-mail, copying the defense, stating, "Would it be

6   possible pending the Court's review and ruling on the briefing

7   for the current motion to be filed under seal?  Without this

8   step, even if the Government ultimately prevails, the victim

9   will suffer continued exposure.  We're not trying to strike

10  anything, just limit the public dissemination of private

11  information in the interim."

12         Now, Ms. Feve, I note that in your motion to redact,

13  the one filed on Wednesday, it wasn't styled an emergency

14  motion.  It didn't ask to expedite the briefing schedule.  It

15  didn't argue that the motion to redact should be summarily

16  granted without giving the defense an opportunity to weigh in,

17  and it didn't ask for interim or provisional relief.  So it

18  didn't ask for the motion to dismiss to be sealed pending

19  decision on the Government's motion to redact.

20         On Friday afternoon, in response to Ms. Feve's e-mail

21  asking for provisional sealing, my deputy clerk wrote, at my

22  direction, The Government is free to file a motion.  If the

23  Government does plan to file one, it would be helpful to get the

24  defense's position on the motion before filing."

25         A little after 4:00 o'clock on Friday, the Government

1    wrote another e-mail to my deputy clerk copying Mr. Armstrong

2    and copying my chambers e-mail account, and this is the one that

3    begins, "Good afternoon, everyone."  I'm not going to read the

4    whole thing, but the relevant part, it says, "I'm sorry to

5    intrude on everyone's Friday afternoon, but we're concerned

6    about the continued exposure of Victim A's nonpublic information

7    in defendant's public filing.  Rather than moving for sanctions,

8    the Government initially tried to file a short, unobjectionable

9    motion seeking redaction of the nonpublic information right

10   away.  As of today, it now appears there will be no remedy for

11   Victim A unless and until the Court receives additional briefing

12   and hears argument on the matter no earlier than next week.

13   Given this timeline, the Government wishes to highlight the

14   following portion of the protective order that Judge Huie signed

15   on February 9, 2023."

16          Now, as an aside, I'll note that the Government's

17   motion to redact didn't argue the protective order.  This was

18   something that was brought up on the Friday e-mail.

19          Continuing with the Government's e-mail after

20   4:00 p.m., it said, "Given the existence of the protective order

21   in this case and the order's express requirement that discovery

22   materials produced subject to the protective order not be

23   disclosed publicly without prior authorization, the Government

24   requests that defendant's motion to dismiss be immediately

25   withdrawn from the public docket pending the Court's review of

1    the parties' briefing.  The longer this brief is up, the more

2    likely it is to cause irreparable harm."

3          Now, the e-mail was directed to my deputy clerk,

4    copied to Mr. Armstrong and to me, and it certainly read to me

5    that this e-mail was a demand to the Court to withdraw the

6    defendant's motion to dismiss from the public docket.  And this

7    is in a setting where we had -- and maybe paths crossed and it

8    was just minutes before, but we directed the Government needs to

9    file a motion if it wants that relief.

10         So a few minutes later, the Government wrote another

11   e-mail to my deputy clerk and to the defense responding to the

12   statement that the Government was free to file a motion for

13   provisional sealing stating, "Understood.  We're trying to move

14   as quickly as we can and appreciate that defense counsel is very

15   busy.  I will try to get a second motion on file tonight.

16   Kerry, please let me know if you object."

17         So on Friday evening, the Court sent a notice setting

18   this status hearing for this afternoon.

19         On Sunday, Mr. Armstrong sent an e-mail stating that

20   he is still in his murder trial, that he is very ill, and that

21   he would be sending a colleague to court for the hearing today.

22   He wrote "At any rate, I do not object to the motion being filed

23   under seal until further notice."

24         And I was a little unclear on what that meant, but

25   what it means is there is no objection to the provisional

1   sealing of the motion to dismiss pending adjudication of the

2   motion to redact.

3          As of this time, the Government has not filed a motion

4   for provisional sealing, but I understand that agreement has

5   been reached between the parties.

6          Now, it's taken me some time to put all this in the

7   record, and the reason I did that, again, is because none of

8   these e-mails are otherwise part of the record.  They're

9   requests that are being made, but they're not motions; they're

10  just e-mails.

11         So recognizing I'm not ruling on these motions today,

12  I want to see if I can get and give some clarity on this issues.

13         So with regard to the Government's motion to redact,

14  Ms. Feve, I want to make sure I understand correctly the scope

15  of the motion.  As I see it, the motion focuses on three issues

16  or three baskets of issues.  So first is the Government objects

17  to the defense's reference to the victim by using initials

18  rather than by using "Victim A."  So that's number one.

19         Number two, the Government objects to the defendant's

20  reference to the victim's brother-in-law by full name.

21         And, third -- this is more of a basket than a single

22  issue -- the Government objects to certain language, other

23  language, in the motion to dismiss.  Looking at the Government's

24  motion to redact on page 3, lines 19 through 20, it says,

25  "Essenfeld's motion to dismiss includes irrelevant allegations

about Victim A that appear intended to harass and intimidate her," and then there are citations to specific page and line numbers from the motion to dismiss.

Ms. Feve, do I have all this correct, that that's the entire scope of what the motion to redact is focused on?

MS. FEVE:  Your Honor, you're correct that the motion is directed to Victim A's initials, the use of her brother-in-law's full name.  And we did not go through and give every citation.  I was trying to give what seemed to be the most salient illustrations of our point about there being detailed information regarding the victim that appeared untethered to the legal motion to dismiss and that we were seeking to redact it, or to the extent that we recognize the defense has included these facts by a deliberate choice to not redact anything and to file it under seal so that there was unfettered access to whatever record they thought the Court should have to consider.

But with regard to the question that you've just put before me -- and I will hopefully have an opportunity to address some of the Court's other comments later on -- yes, those are the three buckets.

THE COURT:  Yes.  Okay.

So I'll just note -- and, again, this isn't fully briefed, but with regard to the parts of bucket 3 that weren't specifically enumerated that relate to the victim's appearance, conduct, or biographical information, to the extent that there

1    aren't specific lines identified in the Government's motion, I

2    may have a hard time ruling on those, but it's helpful to know

3    what it is the Government has in mind.

4            MS. FEVE:  And we included the ones that we thought

5    were of the most --

6            Again, we were -- I received the motion.  It was filed

7    on Monday night.  I didn't have an opportunity to review it

8    until the next day, on Tuesday.  And I tried to get this motion

9    on file as quickly as I could, understanding that Mr. Armstrong

10   was unavailable due to his trial schedule.  With that time, I

11   put in what I thought were the most significant facts to be

12   redacted.

13           If it would facilitate the Court's review, I'm happy

14   to put in a detailed errata sheet with every page and line

15   number that refers to information under those three

16   categories of -- I believe you recited it, but the victim's

17   appearance, conduct, and --

18           I forget if it was hobbies.

19           THE COURT:  Biographical information.

20           MS. FEVE:  Yes.

21           So if the Court would like, I can go through and do a

22   supplemental review.

23           Obviously we understand what the Court said; that you

24   have set -- you're trying to keep this train on the tracks, on

25   time and that to that end, you've given us the benefit of having

1  a full 14 days and only shortchanged the Court as far as the

2  time you have to review it.  We understand that.  We saw the

3  Court's order.  We're not going to be seeking any more time.

4  We'll have our motion on file by the 11th.  That won't be an

5  issue.

6      We're trying to research the First Amendment issues,

7  and we understand -- I appreciate what the Court said.  If we

8  need leave to file for extra time, we will.  I don't think that

9  will be necessary.  I'm trying to get the response that the

10  Court deserves on file, on the deadline that you set.

11      We're also just trying at the same time -- this was a

12  very unexpected development.  I did not expect in a motion to

13  dismiss to see a very detailed, factual description pertaining

14  to the victim.  I thought it was going to apply to the face of

15  the indictment and how under the First Amendment the Court

16  should analyze it as such.

17      I'm also, like many federal practitioners, still

18  somewhat new to a more victim-centric practice, and with the

19  recent DoJ guidance on the CVRA and being more mindful of the

20  how we handle victim issues, I apologize to the Court that I'm

21  still learning and trying to do a better job at kind of

22  internalizing the CVRA and some of the additional obligations

23  that it imposes on us, and if my concern about mishandling that

24  led to my poorly communicating with the Court or to defense

25  counsel, I profoundly apologize.  There was in no way, shape, or

1  form a demand on Friday, at least it was not intended.  How it

2  read, I can only apologize for.

3          But the Court correctly anticipated that I had not, in

4  fact, disregarded your CRD's e-mail that I should file a motion.

5  I would never do that.  But as you can see, it was a lengthier

6  e-mail that I had been drafting, and that while I was drafting,

7  your CRD's e-mail came in.  I didn't see it until I had already

8  sent the e-mail on Friday, and that was why I then responded to

9  let her know I have received it; I will act accordingly.  So I

10  was not acting in deliberate disregard of her e-mail, just as

11  you noticed based on the kind of close-in-time --

12          I was trying, given the timing --

13          And you're right.  I absolutely failed.  I should have

14  made it clear that it was an exigent time-sensitive request.  So

15  I apologize for that.

16          THE COURT:  All right, Ms. Feve.  No apology needed.

17          But going back to the part about the specification of

18  the objectionable language, was there any effort to meet and

19  confer with the defense over that?

20          MS. FEVE:  No, Your Honor, because he was in trial,

21  and I felt like under the CVRA, I needed to try to get it taken

22  down very quickly.

23          And, again, what we tried to make clear in the motion

24  was that we were not arguing there was any misconduct; we were

25  saying that between the balance of the victim's rights and the

1    defendant's rights, we believe that the CVRA justified either

2    redacting or filing under seal.  So we're not trying to preclude

3    him or limit his ability to make any argument.  So for that

4    reason, I thought it was going to be unobjectionable,

5    particularly as it was not saying that anyone had done anything

6    wrong.

7            He eventually responded.  And, as you saw, if it takes

8    him 24 hours to respond to your CRD, you can only imagine how

9    busy he is, given that typically we all understand that when

10   there's a communication from the Court, we're expected to

11   respond promptly.  If it takes him 24 hours to respond to the

12   Court, he's not going to have an ability to respond to me faster

13   that he can respond to the Court.

14           THE COURT:  All right.  But you see the concern, that

15   if there's a request that the Government is making, that the

16   Government deems unobjectionable, it would be better to have

17   agreement of counsel and to not even file the motion or to file

18   a joint motion or something like that.

19           In this case, especially where it's not even clear to

20   me exactly what it is the Government is seeking to redact, that

21   process --

22           I recognize Mr. Armstrong is in trial, but whether he

23   can review it or a colleague can review it or it takes an extra

24   day, that process could save a lot of heat and friction.  It may

25   make filing a motion unnecessary, or if there is a motion, it

1    ensures that what's filed is actually contested.

2         MS. FEVE:  Your Honor, obviously it would have been

3    better if we had had time to confer and reach an agreement.  I

4    alluded earlier to us having a very robust and candid

5    meet-and-confer a few weeks earlier.  It was with Mr. Amigo,

6    who's the defense investigator, and Mr. Armstrong.  I didn't

7    realize until his e-mail on Sunday that he had an associate.  My

8    understanding was that it was him and Mr. Amigo as his

9    investigator.  Had I known there was another attorney I could

10   communicate with, I would gladly have done so.

11        Because part of that conversation could arguably be

12   subject to one of the Rules of Evidence that precludes us

13   discussing it, all I can say is that when I saw this motion to

14   dismiss, based on prior communications I had with counsel, my

15   understanding was that this was a deliberate tactical strategy

16   and that it was a tactical strategy that the defense intended to

17   pursue, and I did not think I was going to convince him to

18   choose it otherwise.

19        So I apologize to the Court.  I appreciate the Court's

20   perspective, that had I handled the exposure of the victim's

21   information to the public in a different way, it would have been

22   better, and I apologize for that.

23        THE COURT:  Okay.  I appreciate that, Ms. Feve, and no

24   apology needed.  The purpose for this is so we all get on the

25   same page.  I'm learning more about where the parties are coming

1    from.

2        But with regard to that motion to redact, Ms. Feve,

3    again this is not argument on it, but having read it, I do want

4    to express some concerns about the merits of that motion.  It's

5    based in part on the CVRA, but as far as I can tell, it doesn't

6    cite a single case from any jurisdiction holding that the CVRA

7    is a basis for sealing or redacting records.  I'll give you a

8    chance to respond, although you don't have to.  Again, this is

9    subject to the briefing schedule.  But it's also based in part

10   on the Court's inherent authority, and as far as I can tell,

11   there's not a single case in your motion that addresses the idea

12   that initials are inadequate to protect identity, that addresses

13   the notion that a victim's interest in anonymity extends to the

14   names of anonymizing other witnesses or to the idea that a

15   victim's interest in anonymity extends to other material that

16   you want to redact.

17       Now, it may be --

18       I understand why you want to redact it, but what I see

19   in this motion are legal contentions that are not supported

20   other than by very broad, abstract principles of fairness and

21   dignity and privacy.  I think we've covered this, but there's

22   just nothing about that motion that would cause me to read it

23   and say this is something that needs summary and immediate

24   relief on it.

25       You don't have to respond to that, but if there's

1    anything you'd like to say, you may.

2         MS. FEVE:  You know, Your Honor, there is wide

3    variation among courtrooms in this district as far as how they

4    err on the side of privacy and dignity.  For instance, one of

5    the cases that I cited --

6         And you're right.  It was a very short motion.  It was

7    intended to be unobjectionable, and I thought that on its face,

8    if you have a victim whose last name starts with an uncommon

9    letter of the alphabet, that has less anonymity than if you

10   refer to them as "Victim A," and given that there were no public

11   documents and the Government had clearly made a mindful effort

12   throughout this process to not include any initials, the

13   decision to use a victim's initials, especially when they have

14   distinctive letters, is a choice.  It seemed to me that

15   "Victim A" versus distinctive initials was, on its face, less

16   anonymous.  I appreciate your point that I did not find and cite

17   case law -- and that's my failure to do so -- for why parties

18   shouldn't be able to include biographical information as long as

19   it's not fully deanonymizing.

20        The decision from Judge Lopez that I did cite did

21   discuss the fact that even in a civil case, plaintiffs can come

22   as "Jane Doe," not as initials.  Why we do that, to protect

23   their anonymity.  There has been an evolution in the practice of

24   handling victim information away from initials towards

25   "Jane Doe" or towards "Victim A."

1    I understand the Court has permitted me an opportunity

2    to do a rebuttal, and I can attempt to do so there.  But as far

3    as the initials, I apologize for the fact that it didn't occur

4    to me that I should provide legal citation for why more

5    distinctive initials than your average person compared to

6    "Victim A" had less anonymity.

7    I also appreciate the Court's point about including

8    embarrassing information about the victim that was not in the

9    public, that had only been produced in discovery, in a

10   motion to dismiss; that I should have made a greater effort to

11   explain why putting the -- like, lewd and sexualized details

12   about a victim into a public pleading could arguably, under the

13   CVRA, run afoul of protecting that victim's dignity.  And I'll

14   do a better job in my rebuttal.

15   THE COURT:  All right.  Mr. Katz, let me turn to you

16   for a moment.  I hope you and Mr. Essenfeld can appreciate the

17   sensitivities in this case.  The charges here are based on the

18   factual allegation that Mr. Essenfeld, as an act of spite,

19   created false social media profiles in the victim's name; put

20   statements purporting to be from her, put up material purporting

21   to be material that she put up, including compromising photos of

22   her that she had shared with Mr. Essenfeld; reached out to use

23   the social media platforms in a way that increased the

24   likelihood that friends, family, coworkers of Victim A would see

25   that website and would believe that that was Victim A, and as a

1  result, caused emotional distress to Victim A, and in doing so,

2  engaged in harassment and violated the cyberstalking law.  So

3  that's the allegation.  They're not proven.  That's to be proven

4  at trial.  But obviously the risk is that there's going to be

5  some part of the litigation process that doesn't use the same

6  means, doesn't use the legal means, but ends up in the same

7  place, which is causing undue humiliation and distress and that

8  sort of thing.  So I'm not saying that that's Mr. Armstrong's

9  intent in drafting that pleading, but I want the defense to be

10 aware of that risk, and I think you already are.

11          Seeing where we are in the case right now, Mr. Katz,

12 let me ask you this:  Do you have objection going forward in

13 pretrial motions to referring to the victim as "Victim A"

14 instead of by the victim's initials?

15          MR. KATZ:  Your Honor, I would have an objection.

16 Honestly, this is something I believe is the subject of the

17 motion to redact, and I believe it's something that

18 Mr. Armstrong and Mr. Essenfeld feel strongly about.

19          I do think that Mr. Armstrong has taken steps to make

20 sure that details, especially specific biographical information,

21 in his motion leaves the alleged victim anonymous, but I don't

22 think that there's -- and I don't think that there's an

23 intentional tactic of humiliating the alleged victim or putting

24 out information that makes her discoverable in his motion so

25 that he'd win a case.  I just really -- I'm 100% sure that

1    that's not what's occurring.  But I don't believe that I can

2    give, given the authority I have today, provide that we're

3    going -- that Mr. Armstrong is going to now start referring to

4    the alleged victim as "Victim A."  I'm not saying that he won't

5    do that; I just don't believe right now is the place that I can

6    assent to that.

7            THE COURT:  Well, you know, as I said, we're not

8    adjudicating the motions.  The motions have briefing schedules.

9            But I'll tell you, Mr. Katz --

10           I mean, I just got done giving the Government a hard

11   time about failing to meet and confer with the defense, failing

12   to see if what they claim to be unobjectionable is really

13   unobjectionable, but --

14           Again, you're entitled to take whatever position you

15   want, but it surprises me to hear that you have some theory for

16   why the victim's initials should be using instead of "Victim A."

17           And you don't have to respond to this, Mr. Katz, but

18   do you have any inkling of what the legal basis is or what the

19   strategic basis is in referring to the victim by her initials

20   instead of just saying, "Victim A" when "Victim A" would clearly

21   be fully anonymized as far as a name?

22           MR. KATZ:  I'm not aware, in my limited knowledge, of

23   any specific reason why "Victim A" would happen over specific

24   initials.

25           I am aware that Mr. Armstrong has gone above and

1   beyond what the -- I think the Court rules require to make a

2   victim anonymous, which would simply be using a first name and

3   last initial.  In his briefing, I believe he uses just two

4   initials.  It would just be beyond the authority I was conferred

5   today and just the ability for me to communicate with

6   Mr. Armstrong given that he's in a very contentious murder trial

7   for me to understand what specifically his intent is and his

8   conversation was with Ms. Feve.

9        Sorry.  I apologize for mispronouncing your last name.

10       It would -- as to that, I believe that everything for

11  today's purposes can be submitted to you, having the document be

12  nonpublic, but I don't want to overstep bounds or go beyond what

13  Mr. Armstrong has spoken to Mr. Essenfeld about, about using

14  "Victim A" versus initials.  I just don't want to make that

15  extra step, especially because that is going to be a requirement

16  that Mr. Armstrong goes in and changes his motion.  It would

17  require him to either withdraw his motion or go in and change

18  it, which I don't have the authority to do.  I'm not prepared to

19  do that and to come back and say that's what we're doing here

20  today.  I'm not saying he won't agree with the Court.

21       THE COURT:  Okay.  And I understand, and it would

22  require changing the motion.  That would take potentially

23  ten minutes.  You know, it would probably take 60 seconds to

24  change the document and another nine minutes to e-file it.  But

25  your position, I understand.

1    I'm going to ask you this, Mr. Katz, but I take it the

2    answer is the same:  With regard to the second objection the

3    Government has, are you aware of any reason that the defense

4    would insist on identifying her brother-in-law by his full name

5    instead of, for example, using his initials?

6         MR. KATZ:  I believe the answer is the same.  I would

7    think that Mr. Armstrong can appropriately change the motion if

8    necessary, but like I said, I don't have any specific

9    information on why that full name was in there.

10        I am aware, Your Honor, that there are specific facts

11   that were left in the motion and some which the Government finds

12   objectionable that were left in there purposefully, that were

13   necessary to make his First Amendment argument, and I think all

14   facts submitted were for that purpose.  Nothing was meant to

15   simply put something out there that could potentially embarrass

16   the victim if it were disseminated publicly.

17        THE COURT:  Okay.  But as to the name, the full name

18   of the brother-in-law, there's nothing more you have at this

19   time?

20        MR. KATZ:  There's just no -- there was not enough

21   time for Mr. Armstrong to give me sort of a carte blanche or a

22   notice of what to do, specifically because of the short time

23   period and the fact that he was in a murder trial.  I don't want

24   to overstep boundaries or conversations that he's had with

25   Mr. Essenfeld beyond this arena.

1          I understand the Court's wanting to make sure that any

2     kind of information that could embarrass somebody be curtailed,

3     but given the fact of Mr. Armstrong's trial and just the short

4     amount of time period --

5          You know, he wanted to be here today; he just

6     couldn't.

7          THE COURT:  Well, look.  I hope I'm not coming down

8     too hard certainly on you, Ms. Feve.  I don't think I've come

9     down hard on you; I'm asking you questions.

10         But the situation we're in, Mr. Katz, is that this

11    briefing schedule was set a long time ago.  I understand

12    Mr. Armstrong is in trial, but a lot of these issues could be

13    anticipated.  What I was hoping to accomplish by this hearing

14    today is seeing if we could get some sort of clarity or

15    agreement that would prevent us from having to do this every

16    single time something is filed.

17         So every time a motion is filed, there's potentially

18    going to be a Government motion to redact, maybe an additional

19    motion to provisionally seal pending adjudication of the

20    redaction motion.  We can do this every single time, and if the

21    defense's position is that "We're only going to do what the law

22    requires us to do and what the Court specifically orders us to

23    do," then so be it, but if we could take some issues off the

24    table just because the defense is willing to refer to somebody

25    as "Victim A" instead of by their initials, it would certainly

1    potentially make the proceedings a lot easier.  But, like I

2    said, that will be worked out in the briefing.

3              MR. KATZ:  And, Your Honor, I just want to make

4    sure --

5              I will, as soon as I can, discuss these contentions

6    with Mr. Armstrong specifically so he's aware of those three

7    buckets that we've discussed and what the Court would like to

8    do.  Your Honor, I think that I'm aware of the buckets that

9    Your Honor has discussed, and I'll make sure to specifically

10   discuss those with Mr. Armstrong, and where the Court needs any

11   specific buckets for the fact of wanting to speed things along

12   and make it a less acrimonious situation, if there is any

13   acrimony, which I don't believe there is.

14             THE COURT:  Thank you, Mr. Katz.

15             So we're not going to accomplish anything today as far

16   as ruling on the motions, but because we may be here again, and

17   more than once, I do want to share some preliminary thoughts

18   with the parties.

19             It seems to me that the concern about anonymity is one

20   that has an easy and practical fix.  Again, I don't attribute

21   any intent on Mr. Armstrong's part to humiliate the victim in

22   the pleadings.  Consistent with that good faith, I wouldn't

23   expect he'd have any objection to changing it.  If his view is

24   that he'll only do it with a court order, then we can address

25   that in due course.  So I'm not trying to make him agree to

1    anything, but it's possible that he will.  We'll see.  We'll

2    see.  He's not here obviously.

3         The other reason I want to talk through this with the

4    parties is that we have this protective order.

5         Mr. Katz, are you aware of whether Mr. Armstrong was

6    aware of the protective order at the time he filed the motion to

7    dismiss?  Because the protective order was entered in the case a

8    long time ago.  It was before Mr. Armstrong joined the case, but

9    of course it was entered at the joint request of the parties.

10   The reason I signed it is because the parties asked me to sign

11   it, and so that knowledge is something that he should have.

12        Do you happen to know the answer on that?

13        MR. KATZ:  I'm not aware of those specifics

14   Mr. Armstrong knew of the protective order at the time he wrote

15   the motion.  I know that the AUSA has made specific steps to

16   describe specific points in the protective order he may have

17   gone over, but again I think that would be getting into

18   discussing the motion, which I don't know that I'm prepared on

19   his behalf to go forward to discuss today.

20        THE COURT:  Okay.  Ms. Feve?

21        MS. FEVE:  Your Honor, I'm prepared to tell the

22   Court -- and Mr. Amigo can be a witness to it, because he's on

23   the e-mail chain -- but we only agreed to reproduce the

24   discovery once Mr. Armstrong agreed in writing in an e-mail I

25   have dated September 28, 2023, to be subject to the protective

1    order.

2            THE COURT:  So there's a protective order in the case.

3    Again, I didn't draft it originally.  I signed it on joint

4    motion of the parties.  It's pretty broad.  It says you have to

5    get prior written authorization of the Court before disclosing

6    the contents of any material outside of the defense team.

7            The protective order isn't part of the Government's

8    motion to redact.  So we're in the situation where the issue has

9    been raised to me by e-mail, and here we're discussing it, and

10   the defense isn't in a position, I think, to argue the

11   protective order.

12           So, Ms. Feve, do you have anything further?

13           MS. FEVE:  What I was going to --

14           I wanted to clarify the record, because I appreciate

15   that --

16           The parties --

17           I'll speak for myself.  I made the mistake on some

18   level because of how well versed I am in the daily goings-on in

19   this case, of overpresuming a familiarity with everyone, and I

20   apologize that we are kind of dragging you and dropping you into

21   something where --

22           There's been a lot of activity, but fortunately it

23   hasn't involved the Court.

24           So I just want to clarify one thing on the record,

25   because I think it addresses the Court's concern.  And then what

1    I'd like to suggest --

2          Well, I'll begin by making the suggestion, which is:

3    Given that the Court has now had an opportunity to advise and

4    educate the parties on a lot of the concerns and questions you

5    have and fleshed out, at least for me, a lot of the gaps and

6    blind spots in the papers that I have put before the Court, so

7    long as the motion is under seal, we could push out the briefing

8    schedule on it to give Mr. Armstrong some more time.

9          I could also potentially submit a more robust motion

10   that addresses some of the backstory and addresses some of the

11   Court's concerns so Mr. Armstrong has the benefit of getting to

12   respond to that and not getting sandbagged and waiting until I

13   file a reply.  As long as the motion to dismiss is under seal,

14   there's no prejudice.

15         Meanwhile, we can keep the First Amendment motion to

16   dismiss on track as far as the parties' briefing, because

17   there's no issue with the Court's submissions.  We understand

18   what our position is, whether or not it's what the Court adopts,

19   under the CVRA and the protective order, so we're going to take

20   steps to ensure that any responsive pleadings that we submit

21   conform to it.  I can do that if that addresses the Court's

22   concern.

23         Because one of the things I wanted to put before the

24   Court -- and I appreciate, especially given the attention you've

25   directed to making sure that there's a robust and clear record,

1   to make sure that it's not just an oral proffer to the Court but

2   to actually put it before you, is that on September 26, 2023,

3   Mr. Armstrong substituted in.  I e-mailed him that very day and

4   welcomed him to the case and specifically addressed discovery,

5   because I understand, in this Court especially, that you really

6   want to make sure that the parties are exercising reasonable due

7   diligence to keep discovery moving.

8           So on the day he substituted in, I said, "As you may

9   have already seen on the docket, Judge Huie previously entered a

10  protective order in this case that applies to counsel of record.

11  I'm also attaching a copy."

12          And then I gave him a choice of how he would like --

13  what options he would like as far as discovery going forward.

14  I'm not going to give you a verbatim description of his

15  response, because I believe that would violate the local rules,

16  but I can represent to the Court that he expressed no

17  reservations about complying with the protective order two days

18  after I literally sent him a copy.

19          THE COURT:  Okay.

20          MS. FEVE:  So with that record, I can, if it makes --

21  if it is ultimately better for the Court and permits potentially

22  the opportunity for more meeting and conferring --

23          Realistically, Your Honor, I don't think this is a

24  place where we're going to have a meeting of the minds based on

25  the candid conversation I had with Mr. Essenfeld {sic} and his

1   investigator about what their strategy is going forward, but I

2   do believe that other than this particular issue, there are many

3   other issues where the parties are actively trying to find

4   common ground.

5           THE COURT:  Understood, and I appreciate that.

6           Mr. Katz, what about Ms. Feve's proposal of, given

7   that the motion to dismiss is provisionally locked, extending

8   the briefing schedule?

9           So, for example, Ms. Feve could file an amended

10  motion -- it wouldn't be supplemental; it would just supersede

11  the old motion -- by Friday.  Mr. Armstrong would have until

12  next Friday to respond.  So he'll be out of trial, I think you

13  said, March 6th.  That will give him a chance to catch his

14  breath before the motion he has to respond to is even filed, and

15  then I'll likely rule on the papers based on those pleadings.  I

16  doubt I'll need oral argument on it.

17          What do you think about that?

18          MR. KATZ:  Your Honor, I don't think there's any issue

19  with that.  I think that's better for everybody.

20          But I do want to just inquire a little bit on the

21  specific issues that Mr. Armstrong had with the protective

22  order.

23          THE COURT:  That Mr. Armstrong had with the protective

24  order?

25          MR. KATZ:  Yes.

1          THE COURT:  So the issue is this:  As I read it, the

2    protective order says if material is produced in discovery

3    pursuant to this order, the defense isn't allowed to disclose

4    those materials outside of the defense team without

5    authorization of the Court.

6          The Government has taken the position by e-mail that

7    there are certain parts of the defendant's motion to dismiss

8    that disclose the contents of material that was produced in

9    discovery.  So the Government's e-mail on Friday requested that

10   the motion to dismiss be immediately withdrawn.  So I think

11   that's the crux of it.

12         The e-mail that I'm referring to is one that you

13   didn't see but Mr. Armstrong saw.  So the idea would be that

14   Ms. Feve would file a new motion on Friday that raises whatever

15   grounds the Government wants for redacting or sealing the

16   motion to dismiss.  The defense would have a week to respond,

17   and then I think I would take away the Government's reply brief.

18   I'd just take those two motions, and I'd likely rule on the

19   papers; hold argument if I need to.

20         MR. KATZ:  Your Honor, just so I can be clear for

21   Mr. Armstrong, is it to go beyond the protective order to put

22   something in the briefing that would be available to the Court

23   that would be necessary for him to make his First Amendment

24   argument?  I think that's where the question is.  Is there a

25   violation when he puts something in the briefing that is

1    available -- in evidence, that's available to the Court?

2              I don't know -- I think that would be his

3    understanding.  What does he do if he needs to argue something

4    that may be covered by a protective order but needs the Court to

5    be aware of?

6              THE COURT:  So I'll just tell you what the protective

7    order says.  And, again, I didn't write it, but what it says is,

8    let's say --

9              Let me just give you an example.  Let's say the

10   Government produces a witness -- a report of a witness interview

11   to the defense, and the witness/third party said something, and

12   the defense says, "This is relevant to the motion we want to

13   make."

14             Well, under the protective order that the parties

15   moved for and that I signed, the defense would have to get

16   permission from the Court in order to put that in the public

17   record.  So it would mean either the defense has to make a

18   motion for that approval before filing it publicly or it would

19   mean the defense has to, say, lodge that pleading provisionally,

20   subject to allowing the Government to file a motion to seal it.

21   That would be another way to address it.

22             So that's what the protective order says.  Nobody has

23   asked to modify it.  So I'm not here to brainstorm ways it could

24   be different, but that's what it says right now.

25             Is that consistent with your understanding, Ms. Feve?

1          MS. FEVE:  It is, Your Honor.

2          In the past, this is a stock protective order that's

3   used pretty pervasively throughout this district.  I've always

4   been able, with counsel, to discuss any documents or materials

5   that they thought were essential, and if necessary,

6   memorializing in writing a carveout, assuming the parties could

7   get along.

8          So we hear the Court encouraging us to keep meeting

9   and conferring.  I'll keep saying that there is fortunately no

10  personal acrimony.  I think that there is a tactical decision at

11  play with this particular issue.  I think the Court is right to

12  anticipate that this is likely to be an issue, but ultimately it

13  sounds like the Court is preparing to address it and to give the

14  parties kind of the rules of the road depending on how you

15  ultimately come out.

16         The one clarification, if I may, Your Honor, is you

17  mentioned that we were seeking to withdraw the document.  Just

18  to be clear, we're not trying to prejudice or in any way

19  sideline the motion to dismiss.  We're not seeking to withdraw

20  it.  It's really to have it redacted or filed under seal.

21         THE COURT:  All right.  I understand.

22         Where I think we're all aligned, we're going to try to

23  get these motions decided, and these discussions about what

24  needs to be sealed or redacted, that can really take place in

25  parallel.  It shouldn't get in the way of us addressing the

1    merits of it.

2          The other point I want to address about the protective

3    order, Ms. Feve -- well, this is for all the parties -- but,

4    Ms. Feve, you're aware of this:  The protective order provides

5    for a procedure, but it doesn't provide a basis for sealing.  So

6    just like in a civil case, the fact that the discovery is

7    produced pursuant to protective order, that's not a legal basis

8    for sealing it.  There has to be an independent legal basis.

9    The existence of a protective order doesn't even really weigh in

10   favor of sealing.  It's just a procedural mechanism to make sure

11   nobody makes a mistake and puts something in the record without

12   having the chance for a motion to seal.

13         MS. FEVE:  I agree with that, Your Honor, and that's

14   why our motion initially really only addressed the CVRA and the

15   case law about a separate doctrine that routinely permits

16   witnesses to be protected with anonymity.

17         So the protective order is relevant, because obviously

18   when the parties come before you, we're expected to comply with

19   any orders that you set in this case.  But I appreciate that

20   it's -- the fact that we're expected to comply with it does not

21   necessarily make it a grounds for legal relief.  So I appreciate

22   the distinction.  It is part of why we structured the motion

23   that we did that way, but it also seemed relevant given that I

24   understood Mr. Armstrong was unavailable.  I also understood he

25   and I were not going to have an opportunity, with his murder

1  trial, to have a fulsome conversation.  So by reminding everyone

2  about the protective order, it seemed like it was a way to say

3  temporarily there is a basis on which initially all three

4  parties agreed -- with the third party as the Court -- that

5  certain materials should be protected from public disclosure.

6          And I apologize again for the fact that it was an

7  e-mail.  The one thing I will say about the e-mail was that it

8  afforded the Government an opportunity to discuss sensitive

9  details that we couldn't necessarily do in a public filing.  And

10 I am mindful that the procedure for making sealed filings across

11 this district can be very challenging sometimes in terms of

12 ensuring that timely copies get brought to chambers.  And so for

13 us to really engage with some of the merits of the factual

14 allegations of that document, I could not do that in a public

15 document.  So I apologize for trying to kind of do a shortcut

16 there in terms of putting before the Court what it was that we

17 thought was subject to the protective order as well as the basis

18 for which we were seeking the motion.

19          THE COURT:  On the protective order still, the

20 protective order is my order.  So I'm free to modify it or make

21 exceptions in particular cases.  It's unlike decisions I make

22 about sealing, which are based on the First Amendment and

23 subject to review.

24          I'll just share with you some further thoughts on

25 that, Ms. Feve.  To the extent --

1      For example, let's say Mr. Essenfeld makes a statement

2   to NCIS.  That statement is memorialized in a report; the report

3   is produced to the defense pursuant to a protective order.  Just

4   as an example, if the defense wanted to include in their motion

5   the fact that Mr. Essenfeld made a statement to NCIS, I wouldn't

6   see that as covered by the protective order even though it's

7   memorialized by the protective order, because he has his own

8   independent recollection of it.  So there may be material that's

9   produced in discovery, but the way it makes its way into the

10  plaintiff's brief is not as a result of that material; it's

11  through some other channel.

12      The other thing that I'm going to keep in mind as I

13  consider arguments about the protective order is that the

14  defense is responding to charges that the Government brought.

15  The Government has also issued a press release in this case.  To

16  the extent that the defense is speaking about something the

17  Government has already spoken on, even if that material produced

18  to the defense involves the protective order, fairness is going

19  to dictate that they be allowed to do that.  Again, those are

20  abstract principles.

21      All right.  So I'll sum this up at the end of the

22  hearing, but one thing that I'll do is amend the briefing

23  schedule on the motion to redact as follows:  The Government may

24  file an amended motion to redact by Friday.  The defense shall

25  have a week from Friday to respond to it.  Upon filing of the

1  amended motion, the initial motion to redact will be deemed

2  superseded.

3          So we'll do that.  I think we have agreement on that.

4          MR. KATZ:  Thank you, Your Honor.

5          And I just want to make sure that that's only specific

6  to the briefing schedule for that specific motion and wouldn't

7  change any of the scheduling for the trial, just so I can --

8          THE COURT:  Correct.  So that schedule only applies to

9  a motion to redact that will be filed by the Government to

10  supersede the motion to redact that they filed last week.

11         With that, in regard to that motion to redact that

12  you're going to file, Ms. Feve, I have looked at those specific

13  lines that you indicated, and I'm open to being persuaded, but

14  my first read is that that language appears to be consistent

15  with what the defense's theory on the motion to dismiss is.

16         So the theory on the defense's motion to dismiss is a

17  First Amendment argument.  And, Mr. Katz, I'm not going to ask

18  you to -- you can comment on this, but I'm not going to ask you

19  to correct me if I'm wrong.

20         The theory seems to be that Mr. Essenfeld made these

21  statements and posted these photos, and the statements had an

22  element of truth to them; they had some relationship to facts in

23  the world.

24         So if the defendant set up a fake social media account

25  in the victim's name and said -- and I'm paraphrasing --

1   "I cheated on my boyfriend," the defense in the

2   motion to dismiss seems to be, "Well, that's true, because the

3   victim did cheat on her boyfriend."

4           Now let me just pause for a second.  I don't like to

5   use the word "cheat."  I don't like for me to use it.  I'm using

6   it in quotes, and the reason is that cheating, it assumes that

7   the victim had some commitment to Mr. Essenfeld.  Maybe she did.

8   I don't know.  It assumes she breached the commitment, and it

9   assumes that cheating is relevant.  I don't know that any of

10  those things are true.  But the defense that the defendant has

11  articulated in the motion to dismiss is that the statements at

12  issue are protected by the First Amendment because there is

13  something about them that is true.

14          Now, again, I'm not sure how far that goes, because

15  the defense doesn't seem to be that the statements are true,

16  because the statement was in the name of the victim, "I cheated

17  on my boyfriend," and I don't think there's any dispute that she

18  didn't write that.  So I'm not sure I follow it all the way, but

19  there does seem to be some sort of defense argument that is -- I

20  don't know if it's meritorious or not; we'll see from the

21  briefs.  But that does seem to put those allegations in issue.

22          Same with the pole dancing; that the Government has

23  alleged that the defendant falsely represented that the victim

24  was a professional pole dancer.  So to the extent that the

25  defense wants to put in facts to respond to that, it seems to be

1    responding to allegations that the Government has made on the

2    public record.  So I just want to share my thoughts on it at

3    this stage, again, subject to the briefing that will be filed.

4            Anything on that?

5            MS. FEVE:  No, Your Honor.  It's always very helpful

6    to kind of get guidance from the Court about what briefing can

7    best address the Court's concerns.

8            I hear the Court's theory, which I believe would be an

9    as-applied challenge under the First Amendment which typically

10   is only brought after there are actually facts in evidence,

11   which there are not at this time, because it's a

12   motion to dismiss.

13           THE COURT:  Yes.  Well, the thing is I'm hesitant

14   to --

15           I will rule on the motion to dismiss in due course,

16   but I can't rule on the motion in a way that precludes the

17   defense from making the motion.  So it's a little bit of a --

18           MS. FEVE:  It is.  And I think it will be

19   advantageous, given the developments from this afternoon, to

20   have the motion to redact filed under seal be judged after the

21   motion to dismiss, because, again, the Government is not trying

22   to intrude upon the defendant's Sixth Amendment right to present

23   whatever defense he thinks he's entitled to.

24           What we're trying with our motion to come up with,

25   which is what I think the Court alluded to at the top of the

1    hour, is to find some sort of rules of the road as to how the

2    parties are going to publicly discuss the victim that threads

3    the needle of satisfying the defendant's Fifth and

4    Sixth Amendment rights while also satisfying the CVRA, which is

5    incumbent upon the Courts and imposes an obligation on the

6    Courts with regard to how it handles victims in any crime

7    charged.

8          So I would be submitting additional briefing.  I hear

9    the Court about why you feel many of these facts may be

10   interlaced with the defendant's motion.  Again, we're not trying

11   to limit in any way what argument they can make.  It's just how

12   that conversation occurs and to what degree it occurs in public

13   so that, to the extent that we can, on behalf of the CVRA, be an

14   advocate for the victim's privacy and dignity at the same time

15   that we're trying to respect the defendant's Fifth and

16   Sixth Amendment rights.

17         THE COURT:  All right.  And I'm sure you appreciate,

18   Ms. Feve, it would be easier if we could just do everything

19   under seal, but as civil litigants before me know, I follow the

20   case law regarding First Amendment right of access to public

21   documents.  So often it's painstaking and time-consuming,

22   including for the attorneys but also for the Court, ruling on

23   these very detailed motions to seal, going line by line.  And so

24   that's just the situation we find ourselves in.

25         With regard to -- here's another thing I think we can

1    accomplish for today:  With regard to future filings -- so not

2    the motion to redact, not the motion to dismiss, but future

3    filings of materials that are subject to the protective order --

4    Mr. Katz, I'm going to give you two options, and you may be

5    creative to think of a third but, here are two:

6         Let's say you want to file a motion in limine, for

7    example, that discloses the content of material that's been

8    produced in discovery.  Option one would be to confer with the

9    Government before filing it, and if the Government says, "We

10   don't think this is an issue for the protective order," then you

11   can just file it.  File the motion in the public record and

12   include a footnote that says "Defense has conferred with the

13   Government.  The parties agree there is no issue under the

14   protective order" or "No issue" can mean maybe it falls within

15   the scope of the protective order but the parties agree it will

16   be treated as something that can be filed with the public.  So

17   there's option one.  That's the agreement route.

18        Option two is you can file that motion --

19        You can lodge that motion under seal and file it with

20   a request to authorize disclosure.

21        So let me go over that one more time.

22        You would file in the Court's record a request or a

23   motion to authorize disclosure, and impertinent to that publicly

24   filed motion, you would lodge the actual substantive motion you

25   want to file.  We'd have that on record.

1          The Government will then have seven days -- let's say

2     five days to file a motion to seal.

3          If the Government files a motion to seal -- and it

4     could be the entirety of the document; more likely, it's going

5     to be some portion of it -- then we'll address that.  I'll set a

6     motion schedule if needed.

7          If the Government chooses not to file within five

8     days, then we would take that lodged motion and we would put it

9     in the public record.  So for the time being and absent further

10    order, that's how we're going to handle future filings of

11    defense materials that include material that's subject to the

12    protective order.

13         Any questions about that, Mr. Katz?

14         MR. KATZ:  No, Your Honor.

15         THE COURT:  Okay.  Ms. Feve, I had proposed having

16    your amended brief due Friday.  I'll ask you first.  Do you

17    think there's any utility in pushing it out further in the event

18    that you and Mr. Armstrong are able to confer about changes that

19    can be made to the motion to dismiss?

20         MS. FEVE:  I do, Your Honor.  There's been no

21    acrimony.  Honestly, our biggest challenge has been

22    Mr. Armstrong's trial schedule, because he's very in demand and

23    he has a punishing schedule.  So I do believe that between his

24    investigator and Mr. Armstrong, there's no barrier to

25    communication other than time.

1          MR. AMIGO:  I agree.

2          MS. FEVE:  So I do think pushing it out makes sense,

3    because Mr. Armstrong is at a disadvantage, which is that he

4    never wants to prejudice his client, which is part of why he has

5    to come from a place of "no," but that given the time to talk

6    with me, to talk with his investigator who is very familiar with

7    the voluminous materials, and then confer with his client if

8    needed --

9          I've heard the Court.  I think defense counsel -- his

10   associate -- has heard the Court as far as, like, "Can we even

11   agree on 'Victim A'?"  If not, so be it, but giving us some time

12   to address these issues I do believe would be productive,

13   because I believe the parties are coming from a place of wanting

14   to minimize the conflict that we bring before the Court until we

15   actually go to trial.

16         THE COURT:  How much time do you think would make

17   sense?  A week from Friday?

18         MS. FEVE:  I'm asking his investigator, because he

19   knows the schedule better than I do.

20         THE COURT:  Thanks, Mr. Amigo.

21         MR. KATZ:  Your Honor, can I ask or confirm for you to

22   describe option two again so that I can make sure it's clear to

23   Mr. Armstrong?

24         THE COURT:  Yes, but I'll wait till they're done just

25   so we don't have side conversations.

1          MS. FEVE:  Thank you, Your Honor.

2          We believe that with Mr. Armstrong's trial schedule,

3    that if the Government's motion it filed by the 15th, that will

4    give Mr. Armstrong time to meet and confer with me.  So that

5    would push it out --

6          Instead of this Friday, it would be next Friday.

7          Let me make sure I got my dates right.

8          THE COURT:  I think you're right. I think that's a

9    week from Friday.

10          MS. FEVE:  Yes.  So what Mr. --

11          And, again, Mr. Armstrong obviously is the one who

12    knows his trial schedule best and isn't here, but we believe

13    based on when we think he'll get out from his trial, the 15th

14    would be the safest.

15          THE COURT:  So the Government's amended brief will be

16    due March 15th; the defense's brief, March 22nd.

17          Going back to your question, Mr. Katz, okay, so option

18    two is the situation where you're not able to reach agreement

19    and the defense believes it's filing a motion that discloses

20    material that's subject to the protective order.  You are to

21    file a motion -- let's call it a motion to authorize disclosure

22    pursuant to the protective order.  The protective order requires

23    you to ask for permission, so this is how you do it.  And then

24    you lodge the motion you actually want to file at the same time.

25    It's something you can do in ECF.  It's lodging something rather

1   than filing it in the public record.  So it's not going to be in

2   the public record until such time as the Court directs that it

3   is, and then the Government will have five days from the date

4   you've done that in order to file a motion to seal.

5           MR. KATZ:  I just want to clarify, Your Honor.  Just

6   if --

7           The order isn't it's either option one or two; it's

8   not that Mr. Armstrong must go to the Government and ask for the

9   specific facts.  So he can decide to just take option two if he

10  decides it's more beneficial to him.

11          THE COURT:  Absolutely.

12          MR. KATZ:  Thank you, Your Honor.

13          THE COURT:  It could be that you file a motion that

14  doesn't disclose the contents of material that's subject to the

15  protective order, and so then neither option one nor two

16  apply.

17          MR. KATZ:  And I'm guessing that what is covered by

18  the protective order will be more -- will be clarified during

19  that motion to redact.

20          THE COURT:  Well, I don't think it will.  So this is

21  one of the challenges of the protective order.  I signed it, but

22  I don't know what's been produced in the case.  I don't get the

23  discovery production.  So when I read a motion filed by the

24  defense, I have no idea if it contains material that's subject

25  to the protective order.  I think as I read the motion that

1    everything that's been produced has been subject to the

2    protective order.  So I'm not in a position to prescribe for you

3    how to navigate that with regard to a particular document I

4    haven't seen.  And I recognize you'd like more clarity, but

5    that's simply the protective order that's been submitted to me

6    and that I've signed.

7             MR. KATZ:  Thank you, Your Honor.

8             THE COURT:  Look, I appreciate the parties working

9    through this.  I appreciate the very palpable respect that

10   counsel have for each other on a case that is a challenging case

11   that will be vigorously litigated on each side.  I had in mind

12   to order various measures to make sure we stay on track.  I'm

13   not going to do that.  I think we're on the same page.  I'm not

14   going to order meet-and-confer for future motions.

15            Again, I think Counsel have done a good job.  We just

16   found ourselves in a sticky situation given external time

17   demands.

18            So the upshot of today's hearing is a new briefing

19   schedule on the motion to redact; a set of instructions on how

20   to file materials that are subject to the protective order.

21            Is there anything else that we can profitably

22   accomplish today?

23            MR. KATZ:  Your Honor, when would the hearing be for

24   the motion to redact?  Just so I can clarify that with

25   Mr. Armstrong.

1          THE COURT:  The hearing hasn't been set, and there may

2    be no hearing.

3          MR. KATZ:  Okay.

4          THE COURT:  I expect I'll decide it on the papers, but

5    if I look at it and I think a hearing is necessary, then I'll

6    schedule one.

7          MR. KATZ:  Thank you, Your Honor.

8          THE COURT:  Ms. Feve, anything else?

9          MS. FEVE:  Nothing further.

10         Thank you, Your Honor.

11         THE COURT:  Okay.  Thanks, everybody.

12         (Proceedings concluded at 4:12 p.m.)

13                      -    -    -    -

14

15

16                         **CERTIFICATE**

17         I, Tricia Rosate, RDR, CRR, FCRR, CSR No. 10891,

18    certify that the foregoing is a correct transcript from the

19    record of proceedings in the above-entitled matter.

20
          /s/ Tricia Rosate, CSR No. 10891    Date:  April 26, 2025
21        Registered Diplomate Reporter
          Registered Merit Reporter
22        Federal Certified Realtime Reporter
          Certified Realtime Reporter
23

24

25