1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,    )  CASE NO.: 3:23-cr-00177-RSH
                                  )  FRIDAY, JUNE 14, 2024
5              Plaintiff,         )
                                  )  SAN DIEGO, CALIFORNIA
6    v.                           )
                                  )  JURY TRIAL - DAY 5
7    THEODORE E. ESSENFELD,       )
                                  )  HONORABLE ROBERT S. HUIE
8              Defendant.         )  UNITED STATES DISTRICT JUDGE
     _____)  SOUTHERN DISTRICT OF CALIFORNIA

9    APPEARANCES:

10

11   For the Plaintiff, UNITED STATES GOVERNMENT:

12        UNITED STATES ATTORNEY'S OFFICE
          SOUTHERN DISTRICT OF CALIFORNIA
13        BY:  SABRINA FEVE, ASSISTANT UNITED STATES ATTORNEY
               MICHAEL A. DESHONG, ASSISTANT UNITED STATES ATTORNEY
14        880 Front Street, Room 6293
          San Diego, California  92101-8893
15        Ph: (619) 557-5610
          E-mail: sabrina.feve@usdoj.gov
16                michael.deshong@usdoj.gov

17   For the Defendant, THEODORE E. ESSENFELD:

18        LAW OFFICES OF KERRY L. ARMSTRONG, APLC
          BY:  KERRY LEE ARMSTRONG, ESQ.
19        750 B Street, Suite 2820
          San Diego, California  92101
20        Ph: (619) 234-2300
          E-mail:  notguilty01@outlook.com

21

22   Also present:

23

          KAYLA LAIQ, Paralegal, United States Attorney's Office
24   _____
     Tricia Rosate, RDR, CRR CSR 10891   tricia_rosate@casd.uscourts.gov
25   333 West Broadway, Suite 420, San Diego, California  92101
     *Reported stenographically; Transcribed utilizing CAT software*

```
1                          I N D E X

2                                                    PAGE

3   JURY INSTRUCTIONS      ...................................   746

4   VERDICT               ...................................   766

5

6

7

8                        E X H I B I T S

9   EXHIBIT                  DESCRIPTION                PAGE

10  Court's 1     Jury Note                             765

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          SAN DIEGO, CALIFORNIA; FRIDAY, JUNE 14, 2024

2                    8:52 p.m. - 11:40 a.m.

3                        -   -   -   -

4          (Court called to order.)

5          THE COURT:  Good morning, everyone.

6          Please have a seat.

7          THE CLERK:  Calling Matter 1, 23-cr-0177,

8   United States of America v. Theodore E. Essenfeld, for

9   Jury Trial Day 5.

10         THE COURT:  Good morning.  Go ahead and enter your

11   appearance, Counsel.

12         MR. DESHONG:  Thank you, Your Honor.

13         Good morning.  Michael Deshong and Sabrina Feve for

14   the United States.

15         THE COURT:  Mr. Deshong, Ms. Feve, good morning.

16         MR. ARMSTRONG:  Good morning, Your Honor.

17         Kerry Armstrong for Mr. Essenfeld.  He's present,

18   seated to my right.

19         THE COURT:  Mr. Armstrong, Mr. Essenfeld, good

20   morning to you as well.

21         All right.  Members of the jury, welcome back.  Good

22   to see all of you.

23         Mr. Salazar, it looks like you're back in action.  So

24   glad to have all of you back.  You look much better than you

25   did at the end of the day yesterday.

1      JUROR No. 9:  I feel much better.

2      THE COURT:  Good.  Good.

3      All right.  So we had just begun the jury

4  instructions.  I was maybe two sentences into them.  I'm going

5  to begin from the very beginning.

6      Members of the jury, now that you have heard all of

7  the evidence, it's my duty to instruct you on the law that

8  applies to this case.  A copy of these instructions will be

9  available in the jury room for you to consult.

10      In fact, we're going to make a copy for each you so

11  you don't have to share the instructions.

12      It's your duty to weigh and to evaluate all the

13  evidence received in the case, and in that process, to decide

14  the facts.  It's also your duty to apply the law as I give it

15  to you to the facts as you find them, whether you agree with

16  the law or not.  You must decide the case solely on the

17  evidence and the law.  You will recall that you took an oath

18  promising to do so at the beginning of the case.

19      You should also not be influenced by any person's

20  race, color, religious beliefs, national ancestry, sexual

21  orientation, gender identity, gender, or economic

22  circumstances.

23      Also, do not allow yourself to be influenced by

24  personal likes or dislikes, sympathy, prejudice, fear, public

25  opinion, or biases including unconscious biases.  Unconscious

1  biases are stereotypes, attitudes, or preferences that people

2  may consciously reject but may be expressed without conscious

3  awareness, control, or intention.

4       You must follow all of these instructions and not

5  single out some and ignore others.  They are all important.

6       Please do not read into these instructions or into

7  anything I may have said or done any suggestion as to what

8  verdict you should return.  That is a matter entirely up to

9  you.

10      And as I read these instructions to you, members of

11  the jury, you will recognize some of them from the beginning of

12  the case, but some of them are different, so please pay

13  attention.  And you will have a copy of these when you retire

14  to deliberate.

15      The indictment is not evidence.  The defendant has

16  pleaded not guilty to the charges.  He is presumed to be

17  innocent unless and until the Government proves the defendant

18  guilty beyond a reasonable doubt.

19      In addition, the defendant does not have to testify

20  or present any evidence.  He does not have to prove innocence.

21  The Government has the burden of proving every element of the

22  charges beyond a reasonable doubt.

23      The defendant has testified in this case.  You should

24  treat this testimony just as you would the testimony of any

25  other witness.

1          Proof beyond a reasonable doubt is proof that leaves

2     you firmly convinced the defendant is guilty.  It is not

3     required that the Government prove guilt beyond all possible

4     doubt.  A reasonable doubt is a doubt based upon reason and

5     common sense and is not based purely on speculation.  It may

6     arise from a careful and impartial consideration of all the

7     evidence or from lack of evidence.

8          If, after a careful and impartial consideration of

9     all the evidence, you are not convinced beyond a reasonable

10    doubt that the defendant is guilty, it is your duty to find the

11    defendant not guilty.

12         On the other hand, if, after a careful and impartial

13    consideration of all the evidence, you are convinced beyond a

14    reasonable doubt that the defendant is guilty, it is your duty

15    to find the defendant guilty.

16         The evidence you are to consider in deciding what the

17    facts are consists of, one, the sworn testimony of any witness;

18    and, two, the exhibits received in evidence.

19      In reaching your verdict, you may consider only the

20    testimony and exhibits received in evidence.  The following

21    things are not evidence, and you may not consider them in

22    deciding what the facts are:

23         One, questions, statements, objections, and arguments

24    by the lawyers are not evidence.  The lawyers are not

25    witnesses.  Although you must consider a lawyer's questions to

understand the answers of a witness, the lawyers' questions are not evidence. Similarly, what the lawyers have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.

Second, any testimony that I have excluded, stricken, or instructed you to disregard is not evidence. In addition, some evidence was received only for a limited purpose. When I've instructed you to consider certain evidence in a limited way, you must do so.

Third, anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Evidence may be direct or circumstantial.

Direct evidence is direct proof of a fact such as testimony by a witness about what that witness personally saw or heard or did.

Circumstantial evidence is indirect evidence; that is, it is proof of one or more facts from which you can find another fact.

You are to consider both direct and circumstantial evidence. Either can be used to prove any fact. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much

1   weight to give to any evidence.

2           In deciding the facts in this case, you may have to

3   decide which testimony to believe and which testimony not to

4   believe.  You may believe everything a witness says or part of

5   it or none of it.

6           In considering the testimony of any witness, you may

7   take into account the following:  the opportunity and ability

8   of the witness to see or hear or know the things testified to;

9   the witness's memory; the witness's manner while testifying;

10  the witness's interest in the outcome of the case, if any; the

11  witness's bias or prejudice, if any; whether other evidence

12  contradicted the witness's testimony; the reasonableness of the

13  witness's testimony in light of all the evidence; and any other

14  factors that bear on believability.

15          Sometimes a witness may say something that is not

16  consistent with something else he or she said.  Sometimes

17  different witnesses will give different versions of what

18  happened.  People often forget things or make mistakes in what

19  they remember.  Also, two people may see the same event but

20  remember it differently.

21          You may consider these differences, but do not decide

22  the testimony is untrue just because it differs from other

23  testimony; however, if you decide that a witness has

24  deliberately testified untruthfully about something important,

25  you may choose not to believe anything that witness said.  On

1   the other hand, if you think the witness testified untruthfully

2   about some things and told the truth about others, you may

3   accept the part you think is true and ignore the rest.

4           You must avoid bias, conscious or unconscious, based

5   on a witness's race, color, religious beliefs, national

6   ancestry, sexual orientation, gender identity, gender, or

7   economic circumstances in your determination of credibility.

8           The weight of the evidence as to a fact does not

9   necessarily depend on the number of witnesses who testified.

10  What is important is how believable the witness's were and how

11  much weight you think their testimony deserves.

12          You have heard testimony that the defendant made a

13  statement.  It is for you to decide, one, whether the defendant

14  made the statement, and if so, how much weight to give to it.

15          In making those decisions, you should consider all

16  the evidence about the statement, including the circumstances

17  under which the defendant may have made it.

18          You've heard testimony from Digital Forensic Examiner

19  Ann Diosa and Special Agent Alexander Lima who testified about

20  their opinions and the reason for those opinions.  This opinion

21  testimony is allowed because of the specialized knowledge,

22  skill, experience, training, or education of these witnesses.

23          Such opinion testimony should be judged like any

24  other testimony.  You may accept it or reject it and give it as

25  much weight as you think it deserves, considering the witness's

1    knowledge, skill, experience, training, or education; the

2    reasons given for the opinion; and all the other evidence in

3    the case.

4            During the trial, certain maps were shown to you to

5    help explain the evidence in the case.  These maps were not

6    admitted into evidence and will not go into the jury room with

7    you.  They are not, themselves, evidence or proof of any facts.

8    If they do not correctly reflect the facts or figures shown by

9    the evidence in the case, you should disregard these maps and

10   determine the facts from the underlying evidence.

11           Certain charts and summaries have been admitted into

12   evidence.  Charts and summaries are only as good as the

13   underlying supporting material.  You should therefore give them

14   only such weight as you think the underlying material deserves.

15           You are here only to determine whether the defendant

16   is guilty or not guilty of the charges in the indictment.  The

17   defendant is not on trial for any conduct or offense not

18   charged in the indictment.

19           A separate crime is charged against the defendant in

20   each count.  You must decide each count separately.  Your

21   verdict on one count should not control your verdict on any

22   other count.

23           The indictment charges that the offenses alleged were

24   committed on or about certain days.  Although it is necessary

25   for the Government to prove beyond a reasonable doubt that the

1   offenses were committed on dates reasonably near the dates

2   alleged in the indictment, it is not necessary for the

3   Government to prove that the offenses were committed precisely

4   on the dates charged.

5          The defendant is charged in Count 1 of the indictment

6   with cyberstalking in violation of § 2261A(2)(B) of Title 18 of

7   the United States Code.

8          For the defendant to be found guilty of that charge,

9   the Government move prove each of the following elements beyond

10  a reasonable doubt:  One, the defendant used any interactive

11  computer service or electronic communication service or

12  electronic communication system of interstate commerce or any

13  other facility of interstate or foreign commerce to engage in a

14  course of conduct; two, the defendant did so with the intent to

15  harass Rebecca Zerwig; and, three, the defendant's course of

16  conduct would be reasonably expected to cause substantial

17  emotional distress to Rebecca Zerwig.

18         "Course of conduct" means a pattern of conduct

19  composed of two or more acts evidencing a continuity of

20  purpose.

21         "Interactive computer service" means any information

22  service or system that provides or enables computer access by

23  multiple users to a computer server, including a service or

24  system that provides access to the Internet.

25         "Electronic communication service" means any service

1    that provides to its users the ability to send or receive wire

2    or electronic communications.

3          Transmitting a communication using the Internet

4    constitutes the use of a "facility of interstate commerce"

5    regardless of whether the communication actually crossed a

6    state line.

7          The defendant is charged in Count 2 of the indictment

8    with using another person's means of identification without

9    lawful authority in violation of § 1028(a)(7) of Title 18 of

10   the United States Code.

11         For the defendant to be found guilty of that charge,

12   the Government must prove each of the following elements beyond

13   a reasonable doubt:  One, the defendant knowingly used a means

14   of identification of another person; two, the defendant did so

15   without lawful authority; three, the defendant used the means

16   of identification in connection with the cyberstalking charged

17   in Count 1; and, four, use of the means of identification of

18   another person was in or affected commerce between one state

19   and another state.

20         "Means of identification" means any name or number

21   that may be used alone or in conjunction with other information

22   to identify a specific individual, including any name,

23   social security number, or date of birth.  It need not be a

24   physical thing.

25         A transfer of information by the Internet means "in

1    or affecting commerce between one state and another state."

2    An act is done knowingly if the defendant is aware of

3    the act and does not act thorough ignorance, mistake, or

4    accident.  The Government is not required to prove that the

5    defendant knew that his acts or omissions were unlawful.  You

6    may consider evidence of the defendant's words, acts, or

7    omissions along with all the other evidence in deciding whether

8    the defendant acted knowingly.

9    When you begin your deliberations, elect one member

10   of the jury as your foreperson who will preside over the

11   deliberations and speak for you here in court.

12   You will then discuss the case with your fellow

13   jurors to reach agreement if you can do so.  Your verdict will

14   be "guilty" or "not guilty" and must be unanimous.

15   Each of you must decide the case for yourself, but

16   you should do so only after you have considered all the

17   evidence and discussed it fully with the other jurors and

18   listened to the views of your fellow jurors.  Do not be afraid

19   to change your opinion if the discussion persuades you that you

20   should, but do not come to a decision simply because other

21   jurors think it is right.

22   It is important that you attempt to reach a unanimous

23   verdict but, of course, only if each of you can do so after

24   having made your own conscientious decision.  Do not change an

25   honest belief about the weight and effect of the evidence

1   simply to reach a verdict.  Perform these duties fairly and

2   impartially.

3          You should also not be influenced by any person's

4   race, color, religious beliefs, national ancestry, sexual

5   orientation, gender identity, gender, or economic

6   circumstances.  Also, do not allow yourself to be influenced by

7   personal likes or dislikes, sympathy, prejudice, fear, public

8   opinion or biases, including unconscious biases.

9          Unconscious biases are stereotypes, attitudes, or

10  preferences that people may consciously reject but may be

11  expressed without conscious awareness, control, or intention.

12         It is your duty as jurors to consult with one another

13  and to deliberate with one another with a view towards reaching

14  an agreement if you can do so.  During your deliberations, you

15  should not hesitate to reexamine your own views and change your

16  opinion if you become persuaded that it is wrong.

17         Because you must base your verdict only on the

18  evidence received in the case and on these instructions, I

19  remind you, you must not be exposed to any other information

20  about the case or to the issues it involves.

21         Except for discussing the case with your fellow

22  jurors during your deliberations, do not communicate with

23  anyone in any way and do not let anyone else communicate with

24  you in any way about the merits of the case or anything to do

25  with it.  This restriction includes discussing the case in

person, in writing, by phone, tablet, computer or any other
means be it e-mail, text messaging, or any Internet chat room,
blog, website, or any other forms of social media.

This restriction applies to communicating with your
family members or employer, the media or press, and the people
involved in the trial.  If you are asked or approached in any
way about your jury service or anything about this case, you
must respond that you have been ordered not to discuss the
matter and to report the contact to the Court.

Do not read, watch, or listen to any news or media
accounts or commentary about the case or anything to do with
it.  Do not do any research such as consulting dictionaries,
searching the Internet, or using other reference materials.
And do not make any investigation or in any other way try to
learn about the case on your own.

The law requires these restrictions to ensure the
parties have a fair trial based on the same evidence that each
party has had the opportunity to address.  A juror who violates
these restrictions jeopardizes the fairness of these
proceedings, and a mistrial could result that would require the
entire process to start over.

If any juror is exposed to any outside information,
please notify the Court immediately.

Some of you have taken notes during the trial.
Whether or not you took notes, you should rely on your own

memory of what was said.  Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

The punishment provided by law for this crime is for the Court to decide.  You may not consider punishment in deciding whether the Government has proved its case against the defendant beyond a reasonable doubt.

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff you are ready to return to the courtroom.

I'm going to send back several copies of the verdict form so that it's easier to view what it says, but I only want one verdict form signed and returned.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by signed writing, and I will respond to the jury concerning the case only in writing or here in open court.

If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone, including

1   me, how the jury stands, numerically or otherwise, on any

2   question submitted to you, including the question of the guilt

3   of the defendant, until after you have reached a unanimous

4   verdict or have been discharged.

5         All right.  At this time, I'm going to ask my deputy

6   clerk to administer an oath to the bailiffs.  The bailiffs will

7   then escort you to the jury deliberation room.

8         Let me speak you to briefly about my bailiffs.  I'll

9   let them introduce themselves in person to you back in the jury

10   deliberation room, but each of these two individuals is an

11   experienced lawyer.  They are my law clerks, part of my

12   chambers staff.  I rely on them for their assistance, and you

13   are in very good hands with these two.

14         So, Ms. Fincher, would you please administer the oath

15   to the bailiffs.

16         (Bailiffs sworn.)

17         THE COURT:  All right.  At this time, will the

18   bailiffs please conduct the jury into the deliberations room,

19   except Ms. Nguyen and Ms. Robeson.

20         Would you mind just standing by for a moment.

21         (Jury excused to deliberate at 9:10 a.m.)

22         THE COURT:  All right.  Ms. Nguyen and Ms. Robeson,

23   so you're not retiring with the jury at this time.  You are the

24   two alternates in this case.

25         You have worked equally hard with everybody else.

You've been on time with everybody else.  You've been attentive.  I appreciate your efforts very much.  In some ways, it's harder to be an alternate because you sit through everything else, but you potentially, probably, do not deliberate with everybody else.

Your service, however, is not concluded because, in the event that one of the jurors or two of the jurors is unable to continue with deliberations, then we would contact you, and we would substitute you in.

And as you saw from yesterday, things happen; people become unavailable.  So we really appreciate your service and your continued availability.

The Court's admonition continues to apply to you.  So even though you're not going back there, still, until a verdict is reached or the jury is dismissed, do not discuss this case with anybody.

Now, we'll stay in touch.  I believe Ms. Fincher has your contact information.  So we will reach out you to regardless.  If you're needed, she'll call you, but also if the jury reaches a verdict, she'll call you as well and let you know that your jury service is concluded.

So in the event that I do not see you again, I want to thank you both for your contributions and your service and wish you the very best.

So, at this time, you're dismissed, subject to the

1    Court's admonition and also subject to being called to serve if

2    one or more jurors becomes unavailable.

3              So thank you again.

4              (Alternate jurors dismissed.)

5              THE COURT:  All right, Counsel.  The members of the

6    jury have retired.  The alternates have stepped out of the

7    courtroom.

8              One matter I want to put on the record is with regard

9    to the thumb drive that will be going back to the jury with the

10   exhibits on it.

11             Mr. Armstrong, have you now had a chance to review

12   that?

13             MR. ARMSTRONG:  Yes, I have, Your Honor.  It looks

14   good.

15             THE COURT:  It looks good?

16             MR. ARMSTRONG:  Yes.

17             THE COURT:  Very good.

18             Anything else we should address at this time,

19   Mr. Armstrong?

20             MR. ARMSTRONG:  I just had a question about how far

21   away you would like me to be from the courthouse.  I assume

22   maybe 15 minutes?

23             THE COURT:  I'd ask that counsel be 20 minutes away

24   from the courtroom.

25             MR. ARMSTRONG:  I can do that.

1          THE COURT:  So if there are times when the lines are

2     longer, you might want to be that much closer.

3          MR. ARMSTRONG:  Understood.

4          Thank you.

5          THE COURT:  All right.  Ms. Feve?  Mr. Deshong?

6          MS. FEVE:  Nothing further, Your Honor.

7          Thank you.

8          THE COURT:  Okay.  Thank you, Counsel.

9          (Jury excused at 9:17 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          SAN DIEGO, CALIFORNIA; FRIDAY, JUNE 14, 2024

2                  10:18 a.m. - 11:40 a.m.

3                      -  -  -  -

4          THE CLERK:  Re-calling Matter 1, 23-cr-0177,

5    United States of America v. Theodore E. Essenfeld for jury

6    trial.

7          THE COURT:  All right.  All counsel and Mr. Essenfeld

8    are present.

9          Counsel, you've been provided with a copy of the note

10   we received from the jurors.

11         The note says, "Please provide a definition of the

12   term 'harass.'"

13         I'll hear from the parties in a moment.

14         This note, of course, implicates the discussion we

15   all had on Wednesday afternoon.

16         Here's the Court's proposal:  The Court's proposed

17   instruction is this:  "The term 'harass' in the Court's Jury

18   Instruction No. 16 is given its plain and ordinary meaning."

19         But I'll hear from the parties on their positions.

20         Mr. Armstrong?

21         MR. ARMSTRONG:  You know what I'm going to say,

22   Your Honor.  I'm going to ask you again to give the *Yung*

23   definition.  I understand we talked about that a couple days

24   ago.  I understand your previous ruling.  That's the defense

25   position.

1          If the Court is not inclined to do that, then I think

2     that what you just proposed is probably second best from the

3     defense perspective.

4          THE COURT:  Okay.  Thank you, Mr. Armstrong.

5          Mr. Deshong?  Ms. Feve?

6          MR. DESHONG:  Thank you, Your Honor.

7          Given our prior discussions on Wednesday, we have no

8     objection to the Court's proposed response to the note.

9          THE COURT:  Okay.  Thank you.

10         So would the bailiffs please call the jury in.

11         (Jury present at 10:22 a.m.)

12         THE COURT:  Ladies and gentlemen, thank you for your

13    patience.

14         I've received a note signed by Ms. Post.

15         The note says, "Please provide a definition of the

16    term 'harass.'"

17         So I want to thank you for your patience.  As I noted

18    this morning, when there's a juror note, there's a process

19    involved that takes some time.  So we appreciate your bearing

20    with us.

21         Here is the Court's answer to the question posed in

22    the note:  "The term 'harass' in the Court's Jury Instruction

23    No. 16 is given its plain and ordinary meaning."

24         I'll read that again.

25         "The term 'harass' in the Court's Jury Instruction

1    No. 16 is given its plain and ordinary meaning."

2              So that is the answer.

3              I'll excuse you all to continue deliberations.

4              Thank you.

5              (Jury excused at 10:23 a.m.)

6              THE COURT:  All right, Counsel.  We'll call you if we

7    hear anything further.

8              MR. ARMSTRONG:  Thank you, Your Honor.

9              THE COURT:  Thanks, everybody.

10             MR. DESHONG:  Thank you, Your Honor.

11             (Court's Exhibit 1 received into evidence.)

12             (Proceedings adjourned at 10:24 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1          SAN DIEGO, CALIFORNIA; FRIDAY, JUNE 14, 2024

2                  11:02 a.m. - 11:40 a.m.

3                     -  -  -  -

4          THE CLERK:  Re-calling Matter Number 1, 23-cr-0177,

5    United States of America v. Theodore E. Essenfeld for jury

6    trial.

7          THE COURT:  All right.  All counsel are present.

8    Mr. Essenfeld is present.

9          We've been informed that the jury has returned a

10   verdict.

11         Would the bailiffs please bring in the jury at this

12   time.

13         (Jury present at 11:07 a.m.)

14         THE COURT:  All right.  The jury is present.

15         Members of the jury, have you selected a foreperson?

16         PROSPECTIVE JUROR 12:  Yes.

17         THE COURT:  Could the foreperson raise please his or

18   her hand?

19         Ms. Post.

20         JURY FOREPERSON:  Yes.

21         THE COURT:  Ms. Post, you're the foreperson of the

22   jury?

23         JURY FOREPERSON:  Yes.

24         THE COURT:  Has the jury reached a verdict?

25         JURY FOREPERSON:  Yes.

1      THE COURT:  Do you have a copy of the verdict with

2  you?

3      JURY FOREPERSON:  Yes.

4      THE COURT:  Would you please hand that to one of the

5  bailiffs.

6      Thank you.

7      Okay.  I'm going to read the verdict at this time.

8      "We, the jury in the above-entitled action,

9  unanimously find the defendant, Theodore E. Essenfeld, one, as

10  to the offense of cyberstalking, 18 U.S.C. § 2261A(2)(b), as

11  charged in Count 1 of the indictment, guilty.

12      "Two, as to the offense of using another person's

13  means of identification without lawful authority,

14  18 U.S.C. § 1028(a)(7) as charged in Count 2 of the indictment,

15  guilty."

16      Signed and dated as of today.

17      Ladies and gentlemen of the jury, is this your

18  verdict as presented and read --

19      Is this verdict, as presented and read, the verdict

20  of each of you, so say you all?

21      THE JURY:  Yes.

22      THE COURT:  All right.  Do either counsel wish for

23  the jury to be polled at this time?

24      MR. ARMSTRONG:  No, Your Honor.

25      MS. FEVE:  No, Your Honor.

1          THE COURT:  All right.  Members of the jury, we all

2     appreciate your service in this case.  The case was projected

3     to go two weeks; it went faster.  Nonetheless, your service as

4     jurors was exemplary.  Everybody was on time, even when there

5     were delays for other reasons.

6          I know that each of you put aside something to be

7     here and to spend this time with us.  I know in very concrete

8     terms -- well, at least one of you worked through sickness and

9     other conditions to be present and to be on time.  At least

10    another one of you gave up pay to be here and is essentially

11    being here in lieu of being paid for that person's job.

12         But those are just two examples.  Each of you has

13    made a sacrifice to be here, and we appreciate your service

14    very much.

15         Now that the case has concluded, some of you may have

16    questions about the confidentiality of the proceedings.  You'll

17    remember the Court's admonition that I've given you throughout

18    the case.  Because the case is over, the Court's admonition no

19    longer applies.  What that means is that you are free to

20    discuss the case with any person you choose.

21         By the same token, however, I would advise you that

22    you are under no obligation whatsoever to discuss the case with

23    any person.

24         If you do decide to discuss the case with anyone, I

25    would suggest you treat it with a degree of solemnity and that

1   whatever you do decide to say, you would be willing to say in

2   the presence of the other jurors or under oath here in open

3   court in the presence of all the parties.

4           So, at this time, members of the jury, I'm going to

5   excuse you.  Again, it's been a pleasure to see you every day,

6   to get to know you a little bit through the voir dire process,

7   and to see you throughout the course of this trial.

8           I wish you all the very best, and thank you again for

9   your service.

10          You are excused at this time.

11          And members of the jury, please remember to drop your

12  badge off.  There's a basket on the first floor near the time

13  punch card.

14          (Jury dismissed at 11:11 a.m.)

15          THE COURT:  At this time, Ms. Fincher, would you

16  please set a date for sentencing in this case.

17          THE CLERK:  Sentencing will be September 6th at

18  9:00 a.m.

19          MR. ARMSTRONG:  September --

20          THE CLERK:  6th.

21          THE COURT:  And I'm going to order a presentence

22  report prepared.

23          So, with a September 6th sentencing, what I propose

24  is any post-trial motions -- so motion for a new trial,

25  et cetera -- be filed four weeks in advance, and then any

1    oppositions due two weeks in advance to give me a little more

2    time to look at that before the sentencing hearing, and then

3    we'd address the substance of the motions at the hearing

4    itself.

5            Mr. Armstrong, is that agreeable to you?

6            MR. ARMSTRONG:  Yes, Your Honor.

7            THE COURT:  Is that agreeable to the Government, as

8    well?

9            MS. FEVE:  Yes, Your Honor.

10           THE COURT:  We also have the matter --

11           Technically, the case is bifurcated, so we have the

12   matter of forfeiture.  I propose that the parties go ahead and

13   make whatever record they want to in that regard, and I'll

14   issue a ruling.

15           Is the Government and the defense prepared to address

16   the issue of forfeiture?

17           MR. ARMSTRONG:  If I can just say one thing to him

18   first?

19           THE COURT:  Yes.  Absolutely.

20           MR. ARMSTRONG:  We can proceed now if that's okay

21   with the Court, Your Honor.

22           THE COURT:  All right.

23           Mr. Deshong or Ms. Feve?

24           MR. DESHONG:  Thank you, Your Honor.

25           I guess we'd submit to the Court that the evidence

1    presented at trial established a nexus to the accounts, which

2    were the Yahoo! accounts under Ms. Zerwig's name, the

3    becky.zerwig@yahoo, the rebecca.zerwig@yahoo, the Facebook

4    account, and the LinkedIn account.

5            I'll start with those four accounts because those are

6    really the mechanism through which defendant committed both the

7    offense of cyberstalking and the identity theft, and then those

8    were -- the e-mails are what he used to register the LinkedIn

9    and Facebook accounts, and then the LinkedIn and Facebook

10    accounts were the means through which he broadcast this

11    information about Ms. Zerwig and impersonated her to the, sort

12    of, online world.

13            In regards to his cellular phone, you know, I think

14    the sort of testimony and the search of the phone also

15    indicated -- and his own testimony was that is one of the means

16    he used to access the Internet and was also sort of a mechanism

17    through which he committed the offense, and we believe that

18    establishes a sufficient nexus for the Court to find by a

19    preponderance of the evidence that those items identified are

20    subject to forfeiture.

21            THE COURT:  And by "cell phone," Mr. Deshong, you're

22    referring to the black Samsung Galaxy S9?

23            MR. DESHONG:  That is correct, Your Honor.

24            THE COURT:  The only other item that you haven't

25    addressed is the Boost prepaid phone as far as forfeiture.

1          MR. DESHONG:  Oh, thank you, Your Honor.

2          I think, again, the testimony from trial indicated --

3     and Mr. Essenfeld's own testimony -- that, once the victim

4     identified Mr. Essenfeld's known cell phone number associated

5     with the Samsung and clicked the account recovery to prompt him

6     to get these text messages, he took his -- the cell phone

7     number that's attributable to him, the one ending in 58, off

8     those accounts, and he added the Boost Mobile prepaid

9     phone number ending in 1942 to those accounts as a means of

10    concealing his identity and a means of sort of using that phone

11    to associate with those accounts going forward to make sure his

12    name was not associated with them or his true phone number was

13    not associated with them.

14          So we would submit to the Court that that establishes

15    a sufficient nexus to subject that to forfeiture, as well.

16          THE COURT:  Okay.  Thank you, Mr. Deshong.

17          Mr. Armstrong?

18          MR. ARMSTRONG:  Yes, Your Honor.

19          Regarding the accounts, obviously Mr. Essenfeld has

20    no interest in those accounts whatsoever.  There's no issue

21    with that.

22          Regarding the Samsung S9, I currently have it at my

23    office.  The only issue that I just talked about with the

24    Government is that Mr. Essenfeld would like the phone wiped by

25    the Government or NCIS or whoever can do it to get rid of his

1    banking information and things like that.

2              And, finally, the Boost phone.  As Mr. Essenfeld -- I

3    think he testified about this.  That was recycled in one of

4    those kiosks at a mall over two years ago.  It's not in his

5    possession or my possession.  That phone is gone.

6              So that's the gist of it.

7              THE COURT:  So I appreciate the arguments of counsel.

8              At this time, I'm just addressing the technical

9    question of whether the nexus for forfeiture has been proved

10   with respect to these items.

11             Just to be clear for the record, the items are six:

12             One Facebook account assigned Facebook ID

13   100058110700593;

14             Second is LinkedIn account assigned LinkedIn

15   ID 273B6021A;

16             Third is Boost prepaid phone assigned a phone number

17   (760) 612-1942;

18             Fourth is Yahoo! Account 1 bearing Person A's first

19   name and last name;

20             Fifth is Yahoo! Account No. 2 bearing Person A's

21   nickname and last name;

22             And sixth is black Samsung Galaxy S9, IMEI

23   No. 356915093754785.

24             The burden of proof for forfeiture is preponderance

25   of the evidence, and the inquiry is whether each of these items

1    that are subject to forfeiture allegations were more likely

2    than not used or intended to be used to commit the offenses

3    described in Counts 1 and 2.

4             The jury having found Mr. Essenfeld guilty of

5    Counts 1 and 2, I find by a preponderance of the evidence for

6    the reasons stated by the Government that each of these six

7    items were more likely than not used in connection with the

8    offenses of conviction.  So I'm going to order forfeiture of

9    these items.

10            I'm going to direct the Government to prepare a

11   proposed order of forfeiture.  Please send it to the Court,

12   copy Mr. Armstrong on that, and we can address any other issues

13   raised at the time of sentencing, unless counsel see fit to

14   make a motion before then.

15            Anything else we should address for forfeiture at

16   this time?

17            Mr. Deshong?

18            MR. DESHONG:  Not from the Government, Your Honor.

19            THE COURT:  Mr. Armstrong?

20            MR. ARMSTRONG:  No, thank you.

21            THE COURT:  The last thing I want to add is, with

22   regard to sentencing, a presentence report is going to be

23   prepared.  Sentencing is a long way off, but I do want to give

24   the parties early notice of the Court's interest in determining

25   how what I'll call "the fan pages" fit into the sentence to be

1    imposed.

2         Now, that was something that the Government noticed.

3    The Government chose not to offer evidence of that at trial.

4    I'm not second-guessing that, but where that leaves us is that

5    the fan pages are in the record in the sense that they have

6    been the subject of filings.  Those filings are in the Court's

7    docket.  I relied on those filings in connection with the order

8    to show cause I issued and the Court's detention order, but

9    they weren't present at trial.

10        So I'm going to tee up for the parties to address at

11   the time of sentencing how, if at all, those fan pages should

12   be taken into consideration.

13        I'm going to provide the parties with early notice of

14   the Court's intent to depart upward from the otherwise -- I'm

15   sorry -- to vary upward from the otherwise applicable

16   guidelines because of that conduct that was engaged in during

17   the pendency of this case.

18        I identify that so that the parties have a chance to

19   adequately address it.  I'll make any decision on that,

20   obviously, at the time of sentencing.

21        By the same token, if for some reason the Government

22   is not seeking to rely on those documents for purposes of

23   sentencing, then that's something I would want to know, as

24   well, so that I don't prepare for sentencing looking at the

25   part of the record that the Government has, for some reason,

1   disavowed.

2           MS. FEVE:  And, Your Honor, the United States will be

3   relying on those documents, and we will continue to produce

4   discovery to the defense in advance of sentencing with regard

5   to records that we obtain from the providers in between now and

6   sentencing on those issues.

7           THE COURT:  Okay.  And, again, I raise that not to

8   predetermine what my sentence would be.  Again, a presentence

9   report hasn't even been prepared, but I want to provide notice

10  as early as possible so that the parties have a chance to

11  address whether an upward variance is warranted or not.

12          Anything else at this time from the defense,

13  Mr. Armstrong?

14          MR. ARMSTRONG:  Yes, Your Honor.

15          Mr. Essenfeld would like to make a motion to be

16  released pending sentencing.  He's got some issues with the

17  Navy, that if he stays in custody for -- I believe it's over

18  31 days --

19          And maybe he might be better able to address the

20  Court regarding the specific Navy rules.  But that's his

21  request at this time.

22          And if the Court wouldn't mind hearing from him just

23  for a moment regarding these Navy issues --

24          THE COURT:  Well, I don't object to hearing from

25  Mr. Essenfeld, but let's make sure we're on the same page about

1    the statutory standard for detention and bail at this stage.

2            So we were in the category of 18 U.S.C. § 3142, which

3    is release or detention of a defendant pending trial, but now

4    the trial has occurred, and there's been a guilty verdict.

5    We're one section over, § 3143, which is release or detention

6    of a defendant pending sentence or appeal.  Subsection (a) is

7    release and detention pending sentence.

8            This statute provides that, except as otherwise

9    provided, the Court shall order that a person who's been found

10   guilty of an offense be detained unless the judicial officer

11   finds by clear and convincing evidence that the person is not

12   likely to flee or pose a danger to the safety of any other

13   person or the community if released.

14           So the burden shifts from the Government to the

15   defense, and it's a clear and convincing evidence standard as

16   to flight risk and as to danger.

17           So, that being the case, Mr. Armstrong, if you have

18   anything to add beyond what you've said, go ahead.  And then,

19   if Mr. Essenfeld would like to speak, that's okay, too.

20           MR. ARMSTRONG:  Thank you, Your Honor.

21           As far as the flight risk, Your Honor, I don't think

22   by any stretch of the imagination is Mr. Essenfeld a flight

23   risk.  I mean, you know this case pretty well by now from the

24   first amended motion on to the OSC, now you've heard trial

25   testimony.

1          You know, he's been in the U.S. Navy for almost

2    34 years.  He's a Navy captain.  He has two sons here in

3    San Diego.  He has a girlfriend here, who's in court today.  He

4    is not going to flee.

5          If anything, I think the Court obviously should focus

6    on whether he's a danger to the community.  And we argued all

7    this, obviously, at the OSC hearing -- actually, two

8    hearings -- several weeks ago.

9          I just don't think by any stretch of the imagination

10   would Mr. Essenfeld, at least at this point, put anything on

11   the Internet, jeopardize his sentencing whatsoever at this

12   stage.  I just truly do not believe that.

13         With that being said, I would like you to hear

14   briefly from him regarding what's going to happen with his life

15   and his career if he is held in jail between now and the

16   sentencing date.

17         THE COURT:  All right.  One last thing,

18   Mr. Armstrong.  Are you aware of any of the fan sites having

19   been taken down?

20         MR. ARMSTRONG:  I haven't looked at those in the last

21   couple weeks, and I haven't heard from the Government whether

22   they are still up or not.  As I told you, probably almost a

23   month ago, it was my hope that someone would take them down.

24         THE COURT:  Mine, too.

25         MR. ARMSTRONG:  I don't understand because -- I told

1    you this a few weeks ago, Your Honor.  When someone does a mass

2    shooting and they film their manifesto or post their manifesto

3    on Facebook, Facebook takes it down right away.

4         I don't understand why now -- we know those pages

5    should not be up -- why someone can't get them down, but that's

6    beyond the scope of my job.  So that's all I can say about

7    that.

8         THE COURT:  All right.  Thank you, Mr. Armstrong.

9         Mr. Essenfeld, if there's something you'd like to

10   say, please go ahead, sir.

11        THE DEFENDANT:  Yes, sir.  Thank you.

12        As Mr. Armstrong said, I'm not a flight risk.  My

13   older son is here.  My actual fiancée is here.  I am an

14   active-duty officer in the United States Navy and have been for

15   more than 34 years -- more than 33 years, nearly 34.  I have

16   nowhere to go.  Every -- my whole life is here.  I have nowhere

17   to go.

18        My parents are elderly.  I'm not going to go to them.

19   I'm not going to flee the country because I have no resources

20   to flee with.  My retirement, savings, all of the money I had

21   put away for the future has gone to Mr. Armstrong in my

22   defense.  So all I have right now is my family, my house, and

23   my job.

24        My job is going to be taken from me because of this

25   verdict.  There is no option.  The Navy will likely dismiss me

1    or force me into retirement with a board of inquiry.

2              If I am so fortunate to be allowed to retire, I will

3    lose my pension on day 61 of any incarceration.  My pension,

4    should I live to be the age of my parents, into my 80s, is

5    about $6 million.  That was my future.  My savings is gone.

6    Now my future is also in jeopardy.

7              Again, I have nowhere to go.  I have nowhere to flee

8    to.  If I remain here in custody now --

9              I'm currently on leave.  My leave will expire soon.

10   After being out of leave for a period of 30 days -- or I'm

11   sorry.

12             After one day of being absent from work without being

13   on leave, I'll be considered unauthorized absence.  After

14   30 days of unauthorized absence, I'll be placed in a deserter

15   status, which is also a crime.

16             So I'm asking the Court to please release me, allow

17   me to report for duty, take care of my family, take care of my

18   home, and start working on whatever administrative actions are

19   going to come with the Navy's decisions on this verdict.  In

20   some small hope that I can appeal or pursue some other avenue,

21   maybe I can save my future, even if it's not in the Navy.

22             THE COURT:  Well, Mr. Essenfeld, you certainly do

23   have a right to appeal.  We're not at that stage, yet, because

24   you haven't been sentenced.

25             Is retirement an option for you to avoid being

1    declared in deserter status at this stage?

2         MS. FEVE:  No, sir.  In order for me to retire, I

3    have to submit a request to retire.  That request has to be

4    approved.  It's normally a year-long process.

5         And now, because I have been found guilty of a crime,

6    before I'm allowed to retire, I will have to go through a board

7    of inquiry.

8         The board of inquiry would have to determine the

9    characterization of my retirement and discharge.  They would

10   determine whether or not I would get to retire as a captain or

11   if they would reduce me to some lower rank.  They would

12   determine whether or not I was even allowed to retire or if I

13   would be dismissed without any benefits.

14        They would determine the characterization of my

15   discharge, whether it was honorable, dishonorable, or other

16   than honorable.  There are too many moving parts that I don't

17   know.  I've never been in a position like this, and I've never

18   experienced anyone who has.

19        I only know what the rules are.  Currently, I am in a

20   legal hold in the Navy.  I've been performing my duties on a

21   daily basis as assigned, but I'm not permitted to submit a

22   retirement request, nor am I permitted to transfer or accept

23   orders anywhere other than where I currently am working.

24        THE COURT:  I see.  All right.

25        Anything else, Mr. Essenfeld?

1          THE DEFENDANT:  No, sir.

2          THE COURT:  All right.  Ms. Feve?  Mr. Deshong?

3          MR. DESHONG:  Thank you, Your Honor.

4          And I think what Mr. Armstrong and Mr. Essenfeld

5     didn't address is the reason he is in this current situation.

6     You know, he committed these initial offenses against --

7     "Person A," I'll call her.

8          And, then, while given the opportunity to be out on

9     bond --

10          And as the Court will recall, Mr. Essenfeld initially

11     did not get bond because there was no one willing to sign for

12     him, and then his bond was modified --

13          THE DEFENDANT:  That's not true.

14          MR. DESHONG:  -- his bond was modified so he could be

15     released on his own signature.  And then, while out on bond, he

16     took it upon himself to continue victimizing Person A.

17          And those accounts are still up, and the reason

18     they're still up is because, when Mr. Essenfeld used Wikipedia

19     to victimize Person A, it was flagged 17 times and taken down.

20          So he took his activity to WikiAlpha, which has no

21     place to accept legal service, and its domain is registered to

22     an entity, I believe, in the Seychelles Islands.

23          So that account is still up.  We do not have a way to

24     take it down.  He is the only person who has a way to take it

25     down, and he has not done so.

1        So the time for him to think about his future in the

2   military was before he chose to continue victimizing Person A

3   while out on bond.  And he has made no effort to mitigate that,

4   accepted no responsibility for it, and he has shown no

5   contrition for it.

6        And so the concern isn't slight.  It is that he is a

7   danger to the community because, if he is out, he will evade

8   monitoring requirements, as he previously has done, and he will

9   continue to victimize her while under the Court's supervision,

10  as he has previously done.

11       And so we're not going to get into the accuracy of

12  everything Mr. Essenfeld said about the intricacies of his

13  retirement to the Navy.  We submit to the Court that those are

14  collateral consequences of his own actions.  And he had the

15  choice not to continue victimizing her, and now he has to live

16  with the consequences of that choice.

17       And the Court appropriately found by clear and

18  convincing evidence that he is a danger to her and ordered him

19  detained.  The standard has now shifted, and he cannot meet his

20  burden that he is not a danger to her at this point given that

21  he has made no efforts to rectify the damage he's already done.

22       So, on that, we'll submit unless the Court has any

23  questions.

24       THE COURT:  All right.  Mr. Armstrong, anything

25  further?

1      MR. ARMSTRONG:  No, thank you.

2      THE COURT:  All right.  Applying the standard in

3  3143, I find the defense hasn't carried its burden.  I believe

4  that Mr. Essenfeld continues to be a danger to the community

5  and continues to be a flight risk.

6      And my reasoning previously continues to apply, and

7  that is --

8      Mr. Essenfeld, the reason I think you are a flight

9  risk is that the conditions of supervision were not onerous,

10 they were not difficult to comply with, especially the ones

11 that you violated:  Don't create new social media accounts.

12     And yet you did that, and you did it in a way that

13 was tremendously harmful and tremendously brazen and that

14 somehow you thought would perhaps harm the victim but not be

15 traceable back to you.

16     The level of -- well, the level of brazenness that it

17 takes to do something like that on supervised release is just

18 astonishing.  And I don't even know what to make of it

19 because --

20     I heard you testifying, Mr. Essenfeld.  As I said,

21 the Government chose not to offer evidence of the fan pages,

22 but so many of the things you said, sir, they can't be squared

23 with what you've done after being charged in this case.

24     When you were speaking under oath about not wanting

25 the victim to see those fan pages -- not wanting the victim to

1    see the imposter pages, rather; when you were talking about

2    your loving response to her; when you were talking about what

3    you were intending to do with those imposter pages; sir, what

4    you did after you've been charged with this offense belies and

5    undercuts all of that.

6          And the other thing that bothered me at the time of

7    the OSC hearings was that you didn't own up to what you did

8    there, and you still haven't.  You didn't take any steps to

9    mitigate it, and you still haven't, and it's still out there.

10         It's still out there causing harm that's akin to the

11   harm with which you were charged, and it blows my mind why you

12   would choose to make those decisions, not just a mistake but an

13   ongoing series of mistakes.  I just -- I don't -- I don't

14   understand how somebody could choose that course.  And it's not

15   a one-time decision; it's an ongoing decision.

16         And I also heard you testify about your lack of

17   technological sophistication.  And it was clear that, over the

18   course of the period that was addressed by the evidence at

19   trial, you became more sophisticated; you became better at

20   using these platforms to cause the harm you wanted to do.

21         But then, again, what the jury didn't hear is that

22   there was Round 2, Round 2 where you approached your task with

23   a level of much greater sophistication:  buying a prepaid

24   burner phone to set up sites, taking every step that you

25   learned from the investigation.

1              You learned how those first imposter pages were

2      traced back to you, and so you took painstaking efforts to make

3      sure that, in Round 2, the conduct you perpetrated while on

4      pretrial release -- Round 2, that they wouldn't be traced back

5      to you.

6              And so you evolved; you got much better.  And I

7      shudder to think, sir, what Round 3 is going to look like.  Who

8      is going to be the target of Round 3, whether it's Ms. Zerwig

9      or somebody else?  I shudder to think at what you are capable

10     of and intend to do as the next step.

11             So I do think, sir, that your having taken no steps,

12     no steps, to accept responsibility for your conduct while on

13     pretrial release, no steps to mitigate that ongoing harm, is

14     just profoundly distressing.

15             And it causes me to conclude that you are a danger.

16     The defense can't prove by clear and convincing evidence that

17     you're not.  Also, that if you can't comply with those very

18     simple conditions of pretrial release, then it's not a good bet

19     that you're going to comply with other conditions, as well.

20             So I do conclude that the defense has not shouldered

21     its burden to prove that you're not a flight risk, either.  So,

22     for that reason, I'm ordering that you continue to be detained.

23             Is there anything else we should address at this

24     time, Mr. Armstrong?

25             MR. ARMSTRONG:  No, thank you.

1          THE COURT:  Ms. Feve?  Mr. Deshong?

2          MR. DESHONG:  No, Your Honor.

3          THE COURT:  So that's all for now.

4          Thanks to all counsel.

5          (Proceedings concluded at 11:40 a.m.)

6

7                    -   -   -   -   -   -

8          CERTIFICATE OF OFFICIAL COURT STENOGRAPHER

9          I, Tricia Rosate, official court reporter, in and for

10   the United States District Court, for the Southern District of

11   California, do hereby certify that pursuant to Section 753,

12   Title 28, United States Code, that to the best of my ability,

13   the foregoing is a true and correct transcript of the

14   stenographically reported proceedings held in the

15   above-entitled matter and that the transcript page format is

16   in conformance with the regulations of the Judicial Conference

17   of the United States.

18

19        Dated this 20th day of April 2025

20        s/ Tricia Rosate
          _____

21        Tricia Rosate, CSR No. 10891, RDR, CRR, FCRR
          Federal Official Court Stenographer

22

23

24

25